Suzanne M. ALLMAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 17A04–9908–CR–381.

Court of Appeals of Indiana.

May 17, 2000.

Robert J. Hardy, Thomas & Thomas, Waterloo, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

Appellant, Suzanne M. Allman, challenges the sufficiency of the evidence supporting her conviction for Operating a Vehicle with at least ten-hundredths percent (.10%) of alcohol by weight in grams in one hundred (100) milliliters of blood,[1] a class

---

1. IND.CODE § 9–30–5–1. Recently, our supreme court pointed out that the legislature has rewritten this section to provide that a person violates this section by operating a vehicle with an alcohol concentration equivalent to at least ten-hundredths (.10) gram of alcohol per one hundred (100) milliliters of blood. *See Sales v. State,* 723 N.E.2d 416,

C misdemeanor. At trial, Allman's blood alcohol, which was .104% sometime after the accident, was offered into evidence. However, because the State did not establish the precise time of the accident, the State was not permitted to rely on a statutory presumption which would have permitted the jury to presume Allman's blood alcohol was .10% at the time of the accident. The State also did not offer testimony relating Allman's blood alcohol level back to the time of the accident. Under these circumstances, Allman contends the evidence was insufficient to support her conviction. We agree and reverse.

### Facts and Procedural History

Around 10:00 p.m. on September 26, 1998, DeKalb County Deputy Sheriff Floyd Fowler was dispatched to a car accident on Interstate 69. Once Deputy Fowler arrived at the scene of the accident, he discovered Allman sitting in her vehicle which was positioned off to the side of the southbound lanes. Because he was unable to locate another vehicle, Deputy Fowler radioed for assistance. He then approached Allman's vehicle and began to speak with her. During the conversation, he detected the odor of alcoholic beverages.

Deputy Fowler then escorted Allman to the vehicle of Deputy Sara Seibert, who also responded to the accident. During questioning, Allman revealed that she had been following two vehicles in the southbound passing lane when the vehicles' brake lights came on. Unable to stop in time, she collided with the vehicle directly in front of her. Deputy Seibert also detected the smell of alcoholic beverages and noticed that Allman appeared intoxicated. As a result, Allman was placed in handcuffs and asked if she would submit to a chemical breath test. Allman agreed and was transported to the DeKalb County Sheriff's Department.

At the station, Allman was given two chemical breath tests by a certified breath test operator. Because Allman did not give sufficient breath samples, the operator was unable to obtain a reading. Allman was then asked if she would consent to a blood test. Allman agreed and signed a consent form around 12:23 a.m. Allman's blood was drawn at 12:28. Record at 137. Subsequent testing revealed that her alcohol by weight in the blood was .104%. Record at 150, 154. On October 16, 1998, Allman was charged with Operating While Intoxicated,[2] a class A misdemeanor, and Operating with at least .10% blood alcohol, a class C misdemeanor.

During a jury trial on July 1, 1999, the State offered into evidence the results of the blood test. Deputies Fowler and Seibert also testified that they were dispatched to the accident around 10:00 p.m. Record at 73, 83. The State did not, however, establish the precise time of the accident. Once the State rested, Allman testified that on the day of the accident, she had been drinking beer in Lansing, Michigan before she drove to Fort Wayne. She further stated that the drive took about an hour and a half, that she temporarily got lost in Michigan and that she last drank around 8:30 p.m. Record at 176–77.

The State then sought to have the jury instructed pursuant to IND.CODE §§ 9–30–6–15(b) and 9–30–6–2(c) which permit a jury to find a defendant's blood alcohol is at least .10% if a blood test is administered within three hours of the alleged violation and the test result reveals at least .10% blood alcohol. The defense objected, arguing that the State failed to establish when the accident occurred and therefore failed to show that the blood test was taken within three hours of the accident. In response, the State argued that because the accident report was made around 10:00 p.m. and the blood was drawn at 12:28 a.m., the jury could conclude that the blood test had been administered within three

421 (Ind.2000) (citing Pub.L. No. 1–2000, § 6).

2. IND.CODE § 9–30–5–2.

hours. The trial court disagreed and refused the instruction. Thereafter, defense counsel moved for a directed verdict, arguing that the State had failed to prove that Allman's blood alcohol was at least .10% when she last operated the vehicle. The trial court denied the motion and Allman was found guilty of operating a motor vehicle with at least .10% blood alcohol and not guilty of operating while intoxicated.

## Discussion and Decision

Allman challenges the sufficiency of the evidence supporting her conviction. In reviewing a challenge to the sufficiency of the evidence, we consider only the evidence most favorable to the verdict. *Kopas v. State*, 699 N.E.2d 1193, 1194 (Ind. Ct.App.1998). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value upon which the jury could have relied to find guilt beyond a reasonable doubt, we will affirm. *Id.*

To support a conviction for operating with .10% blood alcohol, the State was required to prove that Allman operated a motor vehicle with at least .10% by weight of alcohol in her blood. *Melton v. State*, 597 N.E.2d 359, 360 (Ind.Ct.App. 1992), *trans. denied.* In proving that a defendant's blood alcohol is at least .10%, the State is permitted to rely on a statutory presumption codified at I.C. §§ 9-30-6-15 and 9-30-6-2. Those statutes permit a jury to relate the driver's blood alcohol content at the time of a chemical test[3] back to the blood alcohol at the time of the accident. *Finney v. State*, 686 N.E.2d 133, 135 (Ind.Ct.App.1997), *trans. denied.* In particular, the jury is permitted to find that a defendant's blood alcohol is at least .10% at the time of the alleged violation if the test is administered within three hours of the violation and the results of the test reveal a blood alcohol of at least .10%. *Platt v. State*, 589 N.E.2d 222, 228 (Ind. 1992). If, however, the State fails to establish that the test occurred within three hours of the alleged violation, it will not be permitted to rely on the presumption. *Mordacq v. State*, 585 N.E.2d 22, 26 (Ind. Ct.App.1992).

Here, the jury did not receive an instruction on the statutory presumption because the State did not establish that the blood test was administered within three hours of the accident. Thus, Allman argues that the State was required, but failed, to "introduce evidence to extrapolate the test results back in time to the time the defendant operated a vehicle." Reply Brief at 2. Without this extrapolation evidence, Allman argues there was insufficient evidence to support her conviction.

The State concedes that it was not permitted to rely on the statutory presumption. But, it contends that the jury, which determines the law and facts, was entitled to infer, through its common sense, that Allman operated her vehicle with a .10% blood alcohol because the deputy sheriffs responded to the accident around 10:00 p.m. and Allman's blood alcohol at 12:28 a.m. was .104%. According to the State, "[s]imply because the trial court believed the State was not entitled to get the statutory presumption as a jury instruction, should not mean that the jury is barred from making reasonable inferences from the information it had before it." Appellee's Brief at 6. Thus, we must determine what evidence, if any, the State is required to present to prove a .10% blood alcohol when the statutory presumption is not relied upon.

Prior to the enactment of the statutory presumption in July of 1987, this court stated that in order to prove the offense of operating with a .10% blood alcohol, the State was required to show the blood alcohol at the time of the alleged violation by means of extrapolation or a chemical test

---

3. A chemical test is an analysis of a person's blood, breath, urine, or other bodily substance for the determination of the presence of alcohol, a controlled substance or a drug. IND.CODE § 9-13-2-22.

administered at the time of the violation. *See Smith v. State*, 502 N.E.2d 122, 127 n. 5 (Ind.Ct.App.1986) ("It would be necessary to show the blood alcohol content at the time of the offense by means of extrapolation or test results obtained at the time of the violation."), *reh'g denied, trans. denied*; *Tyner v. State*, 503 N.E.2d 444, 449 (Ind.Ct.App.1987) (citing to *Smith* for the same proposition).

A year later, however, a panel of this court held that evidence of extrapolation was not required where a jury could reasonably infer from the facts that a defendant's blood alcohol was at least .10%. *See Sullivan v. State*, 517 N.E.2d 1251 (Ind.Ct. App.1988), *trans. denied*. In *Sullivan*, the defendant consumed nine or ten beers in one hour, slept for three hours, awoke, drank a cup of coffee and drove to a friend's house. *Id.* at 1252. On the way, he was stopped by a police officer and was given a breathalyzer test twenty-five minutes later. *Id.* The result of the test revealed a .20% blood alcohol. *Id.*

On appeal, the defendant, relying on *Smith*, argued that because the State did not present evidence of his blood alcohol level at the time of the alleged violation by means of extrapolation or a chemical test taken at the time of the violation, his conviction should be reversed. The *Sullivan* court disagreed, concluding that "given the factual circumstances of this case, the jury could reasonably have determined that Sullivan's blood-alcohol level met or exceeded ten-hundredths percent at the time of the offense *without expert testimony relating the chemical test result back to the time of violation.*" *Id.* at 1252 (emphasis added). Presuming that the jury was aware that the defendant's blood alcohol level at the time of the violation could have been higher or lower than indicated by the test, the court concluded as follows:

> In light of the fact that the undisputed evidence establishes Sullivan did not ingest any alcohol for a period of at least three hours and twenty minutes before the blood-alcohol sample was taken, and

Sullivan was tested within a short time after the alleged violation, the jury could have logically reached the conclusion, based upon common sense and experience gained·from everyday living, that Sullivan's blood-alcohol level was higher at the time of the alleged violation than it was when Sullivan was tested.

*Id.* at 1253. The State's argument parallels the *Sullivan* court's reasoning that the jury should be permitted to use its common sense and everyday experience to infer that Allman's blood alcohol level was at least .10% at the time of the accident. For reasons set forth below, we do not find the holding in *Sullivan* controlling.

*Sullivan* was decided before the statutory presumption was enacted. Had it been in effect, the jury would have been permitted to rely on the presumption as the test was taken twenty-five minutes after the stop, well within the three-hour limit. Thus, it is questionable whether *Sullivan* is still good law following the enactment of the statutory presumption. But even to the extent the holding is applicable in situations where the statutory presumption is not relied upon, it is not controlling here.

■ In *Sullivan*, the driver's blood alcohol level was well over the legal limit, registering at .20%. Thus, the jurors could have reasonably concluded based upon their common sense and everyday experience that the defendant's blood alcohol level twenty-five minutes after the violation was at least .10%. Here, Allman's blood alcohol registered just over the legal limit at .104%. Thus, we cannot say that the jury could have reasonably concluded beyond a reasonable doubt that Allman's blood alcohol level was higher at the time of the alleged violation than it was when she was tested.

This conclusion is consistent with recent pronouncements from this court. In *Mordacq*, 585 N.E.2d at 27, we addressed a challenge to the sufficiency of the evidence supporting a conviction for operating with .10% blood alcohol where the State relied

234

solely on the statutory presumption to prove that the blood alcohol was .10%. In reversing the conviction we stated that the "State's failure to prove the time [the defendant] operated her vehicle, to a degree precise enough to trigger a statutory presumption that incorporates a precise time limit, precludes evidentiary use of the presumption." *Id.* at 27. We further noted that "[t]here being no other evidence, the conviction must be reversed." *Id.* Similarly in *State v. Stamm,* 616 N.E.2d 377, 380 (Ind.Ct.App.1993) we noted that when the State does not rely on the statutory presumption, test results are still admissible to prove blood alcohol at the time of a violation "if the State produces additional evidence of such BAC by means of extrapolation."

In light of these recent statements and our recognition that "[i]t is commonly understood that [a] drinker's [blood alcohol content] varies over time, as the physiological processes of absorption and oxidation run their course," *Sullivan,* to the extent it is still good law, provides an exception to the general rule set forth in *Smith. Mordacq,* 585 N.E.2d at 24. *See also Finney,* 686 N.E.2d at 137 (Sullivan, J., concurring and pointing out that unless it can be shown that at time of violation driver was not still absorbing alcohol into the blood, it may not be rational to assume that blood alcohol was higher at time of violation).

In this case, Allman's test results revealed a blood alcohol level just over the legal limit and the State did not provide testimony relating that blood alcohol content to the time of the accident. Therefore, we cannot conclude that the State met its burden of proof beyond a reasonable doubt. Therefore, we must reverse.

Judgment reversed.

DARDEN, J., and FRIEDLANDER, J., concur.