Brenna GUY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S04–0407–CR–00301.

Supreme Court of Indiana.

March 2, 2005.

Robert W. Hammerle, Joseph M. Cleary, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

Micah J. Cox, Indiana Criminal Justice Institute, Indianapolis, IN, Attorneys for Amicus Curiae.

SHEPARD, Chief Justice.

The trial court denied Brenna Guy's motion to suppress the results of her breath test, administered to assess intoxication. This interlocutory appeal presents the question whether a tongue stud inserted in her mouth more than twenty minutes before the test renders the results of the test inadmissible. We conclude that it does not, and affirm.

**Facts and Procedural History**

Indianapolis Police Officer Corey Shaffer observed Brenna Guy driving on the wrong side of the street in downtown Indianapolis during the early morning hours of August 24, 2001. He pulled Guy over and conducted three field sobriety tests, all of which Guy failed. Shaffer decided to administer a breath test. He observed Guy at least twenty minutes before the test to make sure that she did not eat, drink, smoke, or place anything in her mouth during that period. He inspected Guy's mouth before the test and noticed her tongue stud piercing but did not ask her to remove it. Guy submitted to the test, which returned an alcohol concentration reading of .11 grams of alcohol per 210 liters of breath. Shaffer arrested Guy, and the State charged her with operating while intoxicated and operating with a blood alcohol content between .08 and .15.

Guy moved to suppress the breath test results. Concluding that the tongue stud was not a foreign substance under Ind. Admin. Code tit. 260, r. 1.1–4–8(1) (2004), the trial court denied her motion. The Court of Appeals reversed, holding that under the regulation a person to be tested must not have *had* any foreign substance in his or her mouth and that a tongue stud is a foreign substance. *Guy v. State,* 805 N.E.2d 835, 840–42 (Ind.Ct.App.2004) *vacated.*

**I. Results Admissible Only if Techniques Followed**

Guy correctly observes that breath test results are admissible in an operating while intoxicated case only if the techniques employed have been approved by the director of the department of toxicolo-

gy at the Indiana University School of Medicine. Ind.Code Ann. § 9–30–6–5(a), (d) (West 2004). The department's approved techniques for conducting the test in question here (a B.A.C. Datamaster with keyboard) appear at Ind. Admin. Code tit. 260, r. 1.1–4–8(1) (2004). The regulation specifies, "[t]he person to be tested must have had nothing to eat or drink, *must not have put any foreign substance* in his or her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time the breath sample is taken." *Id.* (emphasis added).

Guy acknowledges that the tongue stud was not *put* in her mouth during the twenty minute waiting period, but contends that a correct interpretation of the regulation is that the person must not have had any foreign substance in his or her mouth during the waiting period. (Br. in Opposition to Pet. to Trans. at 3–5).

## II. The Regulation Says "Put"

■ The primary rule in statutory construction is to determine and give effect to the intent of the legislature. *Hendrix v. State*, 759 N.E.2d 1045 (Ind.2001). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute. *Chambliss v. State*, 746 N.E.2d 73 (Ind.2001). These principles apply equally to administrative regulations. *Indiana Port Comm'n v. Consolidated Grain and Barge Co.*, 701 N.E.2d 882, 890 (Ind.Ct.App.1998).

The instant regulation, of course, uses the word "put" when referring to foreign substances. The ordinary meaning of "put" is "to place or cause to be placed in a specified position or relationship." *Webster's Third New International Dictionary* 1849 (1993).

The legislative history of the rule suggests that the department of toxicology chose the language purposefully. The proposed version of the rule read, "The person to be tested ... must not have any foreign substance in his/her mouth or respiratory tract ..." 6 Ind. Reg. 2440 (1983). In adopting the final regulation, the department inserted "put" after "have." 7 Ind. Reg. 340, 389 (1984). Guy's interpretation of the regulation (namely that no foreign substance can be in the mouth for twenty minutes prior to the test) is contrary to the apparently conscious decision of the department's experts.

We come to this conclusion despite our decision in *State v. Albright*, 632 N.E.2d 725 (Ind.1994). We noted in *Albright* that the regulation requires a twenty-minute waiting period, and said that "the subject may not have had any foreign substance in his mouth" during this time. *Id.* at 725. The main issue in *Albright* was whether the police officer actually waited the required twenty minutes. *Id.* at 725–26. There was no discussion about the meaning of "put." *Albright*'s precedential value on the point at issue in this case is zero.

## III. Guy's Arguments Are Presented Without Science

■ The logical conclusion to draw from the department of toxicology's use of the word "put" is that any foreign substance placed in a person's mouth more than twenty minutes prior to a breath test poses no problem for the reliability of the results. Guy argues that if "put" means "put," the regulation produces an absurdity in that it would allow admission of breath test results despite a person putting anything in her mouth more than twenty minutes prior to the test. (Appellant's Br. in Opp. to Transfer at 3).[1]

---

**1.** Our holding renders moot the question of whether a tongue stud is a foreign substance.

While one could imagine a Brandeis brief on this topic, Guy neither submitted to the trial court nor referred us to any scientific evidence in support of her contention about absurd results.[2]

In fact, the science available in the public domain points in the opposite direction. The concern over foreign substances a person's mouth is the potential for the substances to absorb and retain alcohol in the mouth, which could falsely elevate the breath alcohol concentration. *See* Patrick M. Harding et al., *The Effect of Dentures and Denture Adhesives on Mouth Alcohol Retention,* 37 J. Forensic Sci. 999, 999–1000 (1992). A number of studies have shown, though, that a fifteen to twenty-five minute waiting period during which nothing is placed in a person's mouth allows sufficient time for any mouth alcohol to dissipate. *See, e.g., Id.* at 999; Barry K. Logan & Rodney G. Gullberg, *Lack of Effect of Tongue Piercing on an Evidential Breath Alcohol Test,* 43 J. Forensic Sci. 239, 239–40 (1998); Ronald L. Moore & J. Guillen, *The Effect of Breath Freshener Strips on Two Types of Breath Alcohol Testing Instruments,* 49 J. Forensic Sci. 1, 1–3 (2004). These studies support the department of toxicology's decision to require that nothing be "put" in a person's mouth within twenty minutes of a breath test.

To be sure, the department and the State could be obliged to defend the validity of the regulations should a defendant submit admissible scientific studies or expert testimony to a trial court in support of a motion to suppress. That has not occurred here.

## IV. Conclusion

We affirm the trial court's denial of the motion to suppress.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., concurs in result, concluding that some substances could retain alcohol even if "put" in the mouth more than twenty minutes before testing, but studs, dentures, etc. are not "foreign" if ordinarily found in the person's mouth.

---

Suffice it to say that distinctions between tongue studs and other substances that can be inserted into a person's mouth, i.e. dental devices, pennies, etc., based on removability or volume are unavailing by themselves. The key consideration is what affect that substance has on the accuracy of the test.

**2.** Named after former U.S. Supreme Court Justice Louis D. Brandeis, a "Brandeis brief"

is one that uses social and economic studies to support legal arguments. *Black's Law Dictionary* 200 (8th ed.2004). The term became popular after Justice Brandeis, as an advocate, persuaded the U.S. Supreme Court to uphold a statute capping the length of a woman's workday with a brief citing such studies in *Muller v. Oregon,* 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908). *Id.*