STATE of Indiana, Appellant–Plaintiff,

v.

James G. LUCAS, Appellee–Defendant.

No. 91A05–1003–CR–247.

Court of Appeals of Indiana.

Sept. 30, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Patrick F. Manahan, Emerson & Manahan, Delphi, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

James G. Lucas was pulled over on suspicion of driving drunk. He failed two portable breath tests in the field. He then failed a B.A.C. Datamaster chemical breath test in jail less than twenty minutes later. Lucas was charged with operating while intoxicated, and he moved in limine to suppress the Datamaster test results. Lucas argued that according to Indiana's chemical breath test regulations, Datamaster results are invalid if any foreign substance is placed in the test subject's mouth within twenty minutes before the test is administered. Lucas claimed that the portable breath test mouthpiece was a "foreign substance" for purposes of the chemical breath test regulations. The trial court granted Lucas's motion to suppress, and the State now appeals. We conclude that a portable breath test mouthpiece is not a foreign substance that will act to invalidate the results of a Datamaster. We reverse and remand.

### Facts and Procedural History

Indiana State Police Officer Tyler Stinson was on routine patrol when he observed Lucas's vehicle cross the center line. Officer Stinson initiated a traffic stop and smelled alcohol. Lucas admitted to having recently consumed a couple of beers.

Officer Stinson gave Lucas a portable breath test (PBT). Officer Stinson opened a new, individually-wrapped mouthpiece for the PBT and attached it to the test instrument. After the mouthpiece was inserted, the initial reading on the device was .000. Lucas blew into the mouthpiece. The test indicated that Lucas's blood alcohol content was .082.

Officer Stinson conducted two other field sobriety tests, both of which Lucas failed. Officer Stinson asked if Lucas would submit to a chemical breath test at the county jail. Lucas agreed.

Before leaving the scene, Officer Stinson administered one more PBT. He opened another individually-wrapped mouthpiece and attached it to the test instrument. After the mouthpiece was inserted, the

initial reading on the device was .000. Lucas blew into the mouthpiece. Lucas's second PBT also registered a blood alcohol content of .082.

Officer Stinson brought Lucas to jail and performed a chemical breath test using a B.A.C. Datamaster. The Datamaster showed that Lucas's blood alcohol content was .09.

Lucas's second PBT and his Datamaster test were administered within twenty minutes of each other.

The State charged Lucas with Class A misdemeanor operating a vehicle while intoxicated endangering a person, Ind.Code § 9–30–5–2(b), and Class C misdemeanor operating a vehicle with an alcohol concentration equivalent to .08 grams of alcohol or more, Ind.Code § 9–30–5–1(a).

Lucas moved in limine to suppress the Datamaster test results. He argued that, pursuant to Indiana's administrative regulations governing chemical breath tests, Datamaster results are invalid and inadmissible if any foreign substance is placed in the test subject's mouth less than twenty minutes before the test is administered. Lucas maintained that in his case, the second PBT mouthpiece was a foreign substance which invalidated the Datamaster results.

The trial court convened a suppression hearing. Officer Stinson appeared and testified to the progression of Lucas's arrest. Officer Stinson also explained that "[a]ll of the [PBT] mouthpieces are closed by themselves in individual plastic pieces." Tr. p. 8–9.

The trial court granted Lucas's motion to suppress. The trial court concluded that the rules promulgated by the Indiana Department of Toxicology "require that 'nothing' be put in a person's mouth within twenty minutes of a chemical breath test."

Appellant's App. p. 12. The State now appeals.

## Discussion and Decision

■ The State argues that the trial court erred in suppressing Lucas's Datamaster results. The State claims that a PBT mouthpiece is not a foreign substance that will invalidate the results of a chemical breath test.

■ The results of a chemical breath test are inadmissible in a prosecution for operating while intoxicated unless the test operator, test equipment, chemicals used in the test, and test techniques have been approved in accordance with the rules promulgated by Indiana University School of Medicine Department of Pharmacology and Toxicology. Ind.Code § 9–30–6–5(d); *Ramirez v. State,* 928 N.E.2d 214, 216 (Ind.Ct.App.2010), *trans. denied.* Accordingly, for the results of a chemical breath test to be admissible, three foundational requirements must be satisfied: (1) the person who administered the test must be certified by the Department of Toxicology, (2) the equipment used in the test must have been inspected and approved by the Department of Toxicology, and (3) the operator must have followed the procedures approved by the Department of Toxicology. *State v. Lloyd,* 800 N.E.2d 196, 199 (Ind.Ct.App.2003).

The toxicology department regulations set forth the following approved procedures for administering a breath test using the B.A.C. Datamaster:

(1) The person to be tested must:

   (A) have had nothing to eat or drink;

   (B) not have put any foreign substance into his or her mouth or respiratory tract; and

   (C) not smoke;

within twenty (20) minutes before the time a breath sample is taken.

(2) The green LED on the instrument display must be glowing.

(3) Depress the run button, enter the password, and insert the evidence ticket or verify that the external printer is ready to use.

(4) Follow the displayed request for information, and enter the information by the keyboard.

(5) When "please blow" appears on the display, place a new mouthpiece in the breath tube. The subject must deliver a breath sample.

(6) When the printer stops, remove the evidence ticket or report sheet from the printer and check the report printed on the evidence ticket or report sheet for the numerical ethanol subject sample and correct date and time.

(7) If the report displays one (1) of the following messages, the test is not valid; proceed as instructed:

(A) If "subject sample interferent" is printed on the report, return to step 1 described in subdivision (1) and perform a second breath test beginning with a twenty (20) minute period. If "subject sample interferent" is printed on the report of this second breath test:

(i) obtain an alternate chemical test for ethanol; or

(ii) perform the breath test on another evidentiary breath test instrument.

(B) If "subject sample invalid" is printed on the report, return to step 1 described in subdivision (1) and perform a second breath test beginning with a twenty (20) minute period. If "subject sample invalid" is printed on the report of this second breath test:

(i) obtain an alternate chemical test for ethanol; or

(ii) perform the breath test on another evidentiary breath test instrument.

(C) If "radio interference" is printed on the report, locate and remove the source of the radio interference and return to step 2 described in subdivision (2) and perform a second breath test. If "radio interference" is printed on the report of this second breath test:

(i) obtain an alternate chemical test for ethanol; or

(ii) perform the breath test on another evidentiary breath test instrument.

(D) If "subject sample incomplete" is printed on the report, return to step 2 described in subdivision (2) and perform a second breath test. If "subject sample incomplete" is printed on the report of this second breath test:

(i) obtain an alternate chemical test for ethanol; or

(ii) perform the breath test on another evidentiary breath test instrument.

However, if the "subject sample incomplete" was caused by the lack of cooperation by the subject, the breath test operator should record that the test was refused.

260 Ind. Admin. Code 1.1–4–8 (2010) (see http://www.in.gov/legislative/iac/).

The foregoing procedures require that no foreign substance be placed into the test subject's mouth or respiratory tract within twenty minutes before a Datamaster breath test. *See id.* at 1.1–4–8(1)(B). "The concern over foreign substances [placed in] a person's mouth is the potential for the substances to absorb and retain alcohol in the mouth, which could falsely elevate the breath alcohol concentration."

*Guy v. State,* 823 N.E.2d 274, 277 (Ind. 2005).

Meanwhile, a PBT is a handheld apparatus used to conduct breath tests in the field. *See* Ind.Code § 9–30–7–1(a). PBTs are akin to general field sobriety tests and provide officers with a simple method for making a threshold determination as to whether a person has consumed alcohol. *State v. Whitney,* 889 N.E.2d 823, 828 (Ind.Ct.App.2008). PBT devices are typically uncertified by the Department of Toxicology, however, so their results tend to be inadmissible at trial. *Id.* The Indiana Code provides that "a law enforcement officer shall offer a portable breath test" or chemical test to any person who the officer has reason to believe operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury. I.C. § 9–30–7–3(a). If the results of a portable breath test indicate the presence of alcohol, the officer shall offer a chemical test to the subject. *Id.* Any driver who operates a vehicle in Indiana impliedly consents to submit to a portable breath test or chemical test if involved in a fatal accident or one involving serious bodily injury. *Id.* § 9–30–7–2.

Whether a PBT mouthpiece is a "foreign substance" for purposes of Datamaster regulation 1.1–4–8(1)(B) is an issue of first impression. We conclude that a mouthpiece is not a foreign substance that will operate to invalidate Datamaster results.

Most instructive are neighboring provisions in the Datamaster regulations. Subsections 1.1–4–8(7)(C) and (D) provide that if a Datamaster displays certain error messages after the subject delivers a breath sample, the test should be repeated beginning at subdivision 1.1–4–8(2). This means that a twenty-minute waiting period need not be observed, the officer may place a new mouthpiece into the Datamaster breath tube, and a new breath sample may be delivered right away in hopes of obtaining a valid result. Under these circumstances, the test subject will have had an initial mouthpiece placed in his mouth less than twenty minutes before the administration of the second test, but that will presumably not invalidate the final result. Therefore, the administrative rules tacitly recognize that a Datamaster mouthpiece is itself not a foreign substance that will invalidate Datamaster results obtained less than twenty minutes later. *See also People v. Wilhelm,* 346 Ill.App.3d 206, 281 Ill.Dec. 411, 803 N.E.2d 1032, 1035–36 (2004) (holding that where a breathalyzer mouthpiece is replaced following delivery of an insufficient breath sample, the mouthpiece is not a foreign substance invalidating subsequent results).

We further conclude that if a Datamaster mouthpiece is not a foreign substance for purposes of the administrative regulations, neither is the mouthpiece of a PBT. We acknowledge that PBTs and Datamasters are separate and distinct devices. Moreover, PBTs are less sophisticated than Datamasters and are not subject to certification by the State toxicology department. But PBTs are still recognized as standard breath testing instruments. The Indiana Code expressly sanctions their use by law enforcement and mandates their use in certain circumstances— even in tandem with chemical breath tests. Officer Stinson's testimony further indicates that customary measures are observed to ensure that PBT mouthpieces are legitimate and uncontaminated. The mouthpieces are individually wrapped in plastic and replaced before each new PBT is performed. For all these reasons, we find no rational grounds to differentiate a PBT mouthpiece from a Datamaster mouthpiece for purposes of subsection 1.1–4–8(1)(B). We therefore hold that a PBT

mouthpiece, like a Datamaster mouthpiece, will not invalidate the results of a Datamaster test if placed in the subject's mouth less than twenty minutes before the Datamaster test is administered.

We conclude that Lucas's Datamaster results were not invalid pursuant to subsection 1.1–4–8(1)(B) and not inadmissible pursuant to Indiana Code section 9–30–6–5(d). The trial court thus erred by granting Lucas's motion to suppress. We reverse and remand.

Reversed and remanded.

MAY, J., and ROBB, J., concur.