

FILED

Oct 31 2018, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marc Lopez
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brittanie R. Corbin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 31, 2018<br><br>Court of Appeals Case No.<br>18A-CR-12<br><br>Appeal from the Montgomery<br>Superior Court<br><br>The Honorable Peggy Q. Lohorn,<br>Judge<br><br>Trial Court Cause No.<br>54D02-1704-CM-1083 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Brittanie Corbin (Corbin), appeals her conviction for operating a vehicle with an alcohol concentration equivalent (ACE) of 0.15 or more, a Class A misdemeanor, Ind. Code § 9-30-5-1(b) (2017).[1]

# ISSUES

Corbin presents two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion in admitting certain evidence; and

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to support Corbin's conviction for operating a vehicle with an ACE of 0.15 or more.

# FACTS AND PROCEDURAL HISTORY

On April 8, 2017, at approximately 11:36 p.m., two deputy sheriffs with the Montgomery County Sherriff's Department, Mathew Riddle (Deputy Riddle) and Ethan Redmon (Deputy Redmon), received a dispatch concerning a "disabled vehicle eastbound on I-74." (Transcript Vol. II, p. 15). The deputies arrived at the scene at approximately 11:43 p.m. and observed a "silver Chevy Cobalt on the right-hand shoulder." (Tr. Vol. II, p. 16). Deputy Riddle

---

[1] We held oral argument on October 9, 2018, at the Winchester Community High School, Winchester, Indiana. We commend counsel for their excellent presentations and thank Winchester Community High School for their hospitality in hosting this oral argument.

approached the vehicle from the driver's side, and Deputy Redmon advanced to the opposite side. Corbin was in the driver's seat, and there was a male passenger, "Alexander," in the front passenger seat. (Tr. Vol. II, p. 14). Deputy Riddle asked Corbin where she was coming from, and Corbin stated that "she was coming from a friend's wedding" and "was driving back to her Indianapolis area address." (Tr. Vol. II, p. 10). While talking to Corbin, Deputy Riddle observed that Corbin had "red glassy eyes and slow . . . slurred speech." (Tr. Vol. II, p. 8). Based on his observation, Deputy Riddle formed an opinion that Corbin was "under the influence of either drugs or alcohol." (Tr. Vol. II, p. 8). Deputy Riddle consequently asked Corbin if she had drunk alcohol, and Corbin admitted that she "had." (Tr. Vol. II, p. 10). At that point, the deputies ordered Corbin and Alexander to exit the vehicle. Deputy Riddle observed that Corbin was "uneasy on her feet" and Corbin held onto Alexander "to keep her balance." (Tr. Vol. II, p. 11). Deputy Riddle began talking with Alexander, and after obtaining consent from Alexander, he tried to see if he "could get the vehicle running." (Tr. Vol. II, p. 11). While Alexander "looked under the hood to see if he could find the issue," Deputy Riddle attempted to "start the vehicle," but the vehicle was "inoperable." (Tr. Vol. II, p. 14).

[4] In the meantime, Deputy Redmon summoned Corbin to the side of the car in order to talk to her. As he was interacting with Corbin, Deputy Redmon observed that Corbin had "red blood[-]shot eyes and was unsteady on her feet." (Tr. Vol. II, p. 18). Corbin also emanated "an overwhelming odor of alcohol." (Tr. Vol. II, p. 18). Based on his "training and experience," Deputy Redmon

formed the opinion that Corbin was "under the influence of a drug or alcohol." (Tr. Vol. II, p. 18). Deputy Redmon asked Corbin "how much" alcohol she had consumed, and Corbin stated, "maybe a glass or two" of "wine" at about "10:00-10:30" p.m. (State's Exh. 1 at 0:20-0:28). Implying that she was not intoxicated, Corbin continued, "you can check me if you want. I don't care." (State's Exh. 1 at 0:25). Deputy Redmon quickly responded, "Yep. We just want to make sure you are okay to drive, and we will figure out your car situation." (State's Exh. 1 at. 0:26). Shortly thereafter, Deputy Redmon walked back to his vehicle to retrieve something. When he returned, Deputy Redmon informed Corbin that he was going to conduct some tests "just to make sure she was okay to drive." (State's Exh. 1 at 1:47).

[5] Deputy Redmon administered a horizontal gaze nystagmus, a field sobriety test, in which Corbin "showed signs of being under the influence of either a drug or alcohol." (Tr. Vol. II, p. 21). Doubting Corbin's first response that she had drunk two glasses of wine, again, Deputy Redmon asked Corbin, "have you only had two glasses?" (State's Exh. 1 at 4:00). Corbin responded, "Yeah. . . . it feels like three maybe . . . I haven't had many." (State's Exh. 1 at 4:00). At that point, Deputy Redmon administered a breathalyzer test, which determined that Corbin was intoxicated.

[6] Because Corbin had failed the administered tests, Deputy Redmon concluded that he had probable cause to arrest Corbin for operating a vehicle while intoxicated and he read Corbin the Indiana Implied Consent Law, which requires the officer to offer the suspect a certified chemical test. Corbin

consented. Corbin was then handcuffed and transported to Montgomery County Jail. Corbin cried "throughout" her transportation to jail. (Tr. Vol. II, p. 29). At approximately 12:20 a.m., Deputy Redmon administered Corbin's chemical breath test. Prior to administering the test, Deputy Redmon ensured that Corbin had not eaten, drunk, smoked, or put any foreign objects in her mouth. The test revealed that Corbin had 0.152 grams of alcohol per 210 liters of breath.

[7] On April 19, 2017, the State filed an Information, charging Corbin with Count I, operating a vehicle with an ACE of 0.15 or more, a Class A misdemeanor and Count II, operating a vehicle while intoxicated, a Class C misdemeanor. On December 5, 2017, a bench trial was conducted. At the end of Corbin's bench trial, the trial court found her guilty of Count I, operating a vehicle with an ACE of 0.15 or more, a Class A misdemeanor; however, it dismissed Count II. On the same day, the trial court held a sentencing hearing and sentenced Corbin to a term of 180 days, all which, except time served, was suspended to probation.

[8] Corbin now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Admission of the Evidence*

[9] The admission or exclusion of evidence falls within the sound discretion of the trial court, and its determination regarding the admissibility of evidence is reviewed on appeal only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d

1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Doolin v. State*, 970 N.E.2d 785, 787 (Ind. Ct. App. 2012).

[10] Corbin argues that the trial court should have granted her motion to suppress the statements she made to the deputies prior to her arrest. We note that once a case proceeds to trial, the question of whether the trial court erred in denying a motion to suppress is no longer viable. *Baird v. State*, 854 N.E.2d 398, 403 (Ind. Ct. App. 2006), *trans. denied*. Instead, we review whether the trial court erred in admitting the evidence at trial. *Id*.

## A. *Miranda*

[11] Corbin contends that while being questioned by deputies about drinking alcohol after she displayed signs of intoxication, the interrogation was custodial in nature and she should have been advised of her rights under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

> In *Miranda* [] the United States Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. These procedural safeguards include an advisement to the accused that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that if he cannot afford an attorney one will be appointed for him. However, these warnings are only required where a suspect is both in custody and subjected to interrogation.

*State v. Necessary*, 800 N.E.2d 667, 669-70 (Ind. Ct. App. 2003) (internal citation marks omitted). A law enforcement officer's duty to give *Miranda* warnings does not attach unless there has been such a restriction on a person's freedom as to render him in custody. *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind. 1995). The Indiana Supreme Court has held:

> Whether a person was in custody at a given time depends not upon the subjective views of either the interrogating officers or the subject being questioned but upon the "objective circumstances." An officer's knowledge and beliefs are only relevant to the question of custody if conveyed—through either words or actions—to the individual being questioned. Likewise, a police officer's "unarticulated plan has no bearing on the question" of custody. The test is how a reasonable person in the suspect's shoes would understand the situation.

*Meriwether v. State*, 984 N.E.2d 1259, 1263 (Ind. Ct. App. 2013).

[12] Corbin maintains that when the deputies initially spoke with her, and both formed the opinion that she was intoxicated and had driven the vehicle before it became disabled, the deputies' concern had shifted from a 'welfare check' to a potential criminal investigation. Corbin therefore contends that, at that moment, she was in a custodial-type situation, and the deputies should have given her *Miranda* warnings prior to questioning her.

[13] Corbin relies on *Moore v. State*, 723 N.E.2d 442, 446 (Ind. Ct. App. 2000) for the broad proposition that an interrogation is necessarily custodial once an officer knows or should know that he is investigating a potential crime and questioning a suspect. In *Moore*, police responded to the report of a pedestrian being struck

by an automobile. *Id.* Moore, the driver of the automobile, was subsequently placed in the back seat of a police cruiser, could not leave the scene, and had a statutory duty to stay and provide information for an accident report. *Id.* This court acknowledged that under the circumstances, Moore was in a custodial-type situation, but that Moore was not in custody until the officer knew or should have known he was investigating a potential crime rather than just an accident when questioning the defendant. *Id.*

[14] While the deputies' initial concern was to check if Corbin needed assistance with her vehicle, we find that their encounter transitioned into a traffic stop. In *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984), the Court concluded that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." Although the Court recognized that the defendant had been seized, it noted the brief nature of such stops, and that such stops "commonly occur in the public view, in an atmosphere far less police dominated than that surrounding the kinds of interrogation at issue in *Miranda* itself." *Id.* In *Pennsylvania v. Bruder*, 488 U.S. 9, 10 (1988), the Court relied on *Berkemer* in holding that police officers were not required to give *Miranda* warnings where an officer "ask[ed] respondent a modest number of questions and request[ed] him to perform a simple balancing test at a location visible to passing motorists." *Id.* at 11.

[15] When Deputy Riddle first questioned Corbin on whether she had consumed any alcoholic beverage, Corbin was neither handcuffed nor physically

restrained in any way, and she had not been told she was a suspect in a crime. There is no evidence that Deputy Riddle suggested to Corbin that she should cooperate, or implied that adverse consequences for noncooperation would result. After exiting her vehicle, Corbin indeed became a suspect to the crime of operating a vehicle while intoxicated. At that point, Deputy Redmon asked further questions about how many alcoholic drinks she had consumed at the wedding; however, we find that these questions were merely cumulative since Corbin had already admitted to Deputy Riddle about consuming alcohol prior to driving her vehicle.

[16] Moreover, the holding in *Berkemer* allows officers to ask questions and request sobriety tests of motorists whom they pull over. As such, we see no reason why the deputies in the instant case could not act similarly when they encountered Corbin at the scene of her disabled vehicle. *See State v. Hicks*, 882 N.E.2d 238, 243 (Ind. Ct. App. 2008) (holding the defendant was not in custody when a police officer asked her if she was driving a disabled vehicle in the immediate vicinity).

[17] Even if Corbin's statements to the deputies were obtained in violation of *Miranda* and erroneously admitted, they are subject to an analysis for harmless error. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt so as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009). "Reversal may be compelled if the record as a

whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact on the fact-finder, thereby contributing to the judgment." *Ground v. State*, 702 N.E.2d 728, 732 (Ind. Ct. App. 1998). "To determine whether the erroneous admission of irrelevant and prejudicial evidence . . . is harmless, we judge whether the jury's verdict was substantially swayed. If the error had substantial influence, or if one is left in grave doubt, the conviction cannot stand." *Lafayette v. State*, 917 N.E.2d 660, 666-67 (Ind. 2009) (citation and internal quotation marks omitted).

[18] Here, Deputy Riddle testified that after meeting Corbin, he observed that she had blood-shot eyes and slow, slurred speech. Deputy Riddle also saw that Corbin was unsteady on her feet when she exited her vehicle. Further, Deputy Redmon smelled an odor of alcohol when he approached Corbin. Corbin failed the field sobriety tests, she was handcuffed and transported to jail. While in jail, Corbin was administered a standardized chemical breath test after being booked in jail. Corbin's ACE was 0.152. Even without the admission of Corbin's inculpatory statements, Corbin's conviction for Class A misdemeanor driving while intoxicated with an ACE of 0.15 or more was supported by independent evidence, and there is no substantial likelihood that Corbin's statements to the deputies contributed to her conviction. As such, any error in the admission of Corbin's statements was harmless.

### B. *Results of the Chemical Breath Test*

[19] Corbin argues that pursuant to Indiana Code section 9-30-6-5(d), the results of her chemical breath test were inadmissible because the State was unable to

certify that the chemical test was properly administered. We note that the results of a chemical breath test are inadmissible in a prosecution for operating while intoxicated unless the test operator, test equipment, chemicals used in the test, and test techniques have been approved in accordance with the rules promulgated by the Indiana University School of Medicine Department of Pharmacology and Toxicology. *Ramirez v. State*, 928 N.E.2d 214 (Ind. Ct. App. 2010), *trans. denied*.

[20] Accordingly, for the results of a chemical breath test to be admissible, three foundational requirements must be satisfied: (1) the person who administered the test must be certified by the Department of Toxicology, (2) the equipment used in the test must have been inspected and approved by the Department of Toxicology, and (3) the operator must have followed the procedures approved by the Department of Toxicology. *State v. Lloyd*, 800 N.E.2d 196, 199 (Ind. Ct. App. 2003). Corbin challenges the third foundational requirement.

[21] Pursuant to Indiana Code section 9-30-6-5(a)(3), the state department of toxicology has promulgated an approved method for administering breath tests using the BAC DataMaster. 260 Ind. Admin. Code 2-4-1. In relevant part, the administrative rule contains the following steps:

> STEP ONE: The person to be tested must:
>
> (A) have had nothing to eat or drink;
>
> (B) not have put any foreign substance into his or her mouth or respiratory tract; and

(C) not smoke;

within fifteen (15) minutes before the time a breath sample is taken.

260 I.A.C. 2-4-1(a). "The concern over foreign substances [placed in] a person's mouth is the potential for the substances to absorb and retain alcohol in the mouth, which could falsely elevate the breath alcohol concentration." *Guy v. State*, 823 N.E.2d 274, 277 (Ind. 2005). Corbin maintains that the results of her chemical breath test were inadmissible because part of 'STEP ONE' was not strictly adhered to. In particular, Corbin alleges that the

Video evidence of Corbin's encounter with police shows her sobbing . . . . Deputy Redmon testified that she was crying all the way to the Montgomery County Jail, but he was unable to confirm that no tears found their way into Corbin's mouth in the 15 minutes just prior to her certified breath test.

(Appellant's Br. p. 20). Corbin relies on Deputy Redmon's testimony that she cried "throughout" her transportation to jail, and because Deputy Redmon could not "accurately tell" if her tears "got in her mouth" within fifteen minutes before her breath sample was taken, the test was invalid and inadmissible at her bench trial. (Tr. Vol. II, p. 29) (Appellant's Br. p. 21).

[22] Corbin then argues that the facts of this case are "diametrically opposed to those in" *Guy v. State*, 823 N.E.2d 274 (Ind. 2005), and we should, therefore, reverse her conviction. In *Guy*, our supreme court held that the presence of a tongue stud placed in the defendant's mouth more than twenty minutes before a

breath test *did not* render the test inadmissible. *Id*. at 275. The court examined the administrative code controlling the procedure for conducting a breath test and held that "[t]he logical conclusion to draw from the department of toxicology's use of the word 'put' is that any foreign substance placed in a person's mouth more than twenty minutes prior to a breath test poses no problem for the reliability of the results." *Id*. at 276. At the time, the court was referring to 260 Indiana Administrative Code 1.1-4-8(1), which was repealed in 2014 which then provided that "[T]he person to be tested must . . . not have put any foreign substance into his or her mouth or respiratory tract . . . within twenty (20) minutes before the time a breath sample is taken." *Id.*

[23] Corbin posits that during her transportation to jail, she was generating "fresh tears . . . by the second." (Appellant's Br. p. 20). As such, pursuant to 260 I.A.C. 2-4-1(a), Corbin argues that her tears were foreign objects put in her mouth within fifteen minutes of her chemical breath test. In turn, the State argues that Corbin offered "no scientific evidence" at her trial, or now on appeal, to support her position that her tears were foreign objects put in her mouth or that her tears were skilled at invalidating a chemical breath test. (Appellant's Br. p. 15). Further, the State directs us to the record and urges us to consider any conflicting evidence in a light most favorable to the trial court's ruling. *See Meriwether*, 948 N.E.2d at 1262.

[24] Turning to the evidence, at Corbin's bench trial, Deputy Redmon testified that he examined Corbin's mouth at "11:54 p.m." and he did not observe any foreign objects in Corbin's mouth. (Tr. Vol. II, p. 26). Then at 12:20 a.m., after

Corbin had been booked in jail, Deputy Redmon administered the chemical breath test. Prior to administering the test, he ensured that Corbin had not eaten, drunk, or smoked anything. Deputy Redmon testified that although Corbin cried on her way to jail, he could not tell if the tears entered Corbin's mouth. Because there is no evidence that Corbin's tears entered her mouth within fifteen minutes of her chemical breath test, and Corbin failed to present any scientific evidence in support of her claim, we conclude that the test was properly administered, and the trial court did not abuse its discretion in admitting the test results.

## II. *Sufficiency of the Evidence*

[25] Corbin also contends that the State presented insufficient evidence to sustain her conviction for Class A misdemeanor operating a vehicle while intoxicated with an ACE of 0.15 or more. Specifically, she claims that (1) there was insufficient evidence to prove that she operated the vehicle, and (2) the chemical breath test was not administered within three hours of when she operated her vehicle.

[26] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

In order to convict Corbin of a Class A misdemeanor, the State was obligated to prove that she "operate[d] a vehicle with an [ACE] to at least fifteen-hundredths (0.15) gram of alcohol per: (1) one hundred (100) milliliters of the person's blood; or (2) two hundred ten (210) liters of the person's breath." I.C. § 9-30-5-1(b). In this case, the results of Corbin's chemical breath test showed that her ACE was 0.152—well above the statutory threshold.

### A. *Operation of the Vehicle*

Corbin alleges that the State presented insufficient evidence beyond a reasonable doubt to show that she *operated* the vehicle. The word "operate" means to "navigate or otherwise be in actual physical control of a vehicle, motorboat, off-road vehicle, or snowmobile." I.C. § 9-13-2-117.5(a). In *Crawley v. State,* 920 N.E.2d 808, 812 (Ind. Ct. App. 2010), *trans. denied*, we listed four factors that could be used to determine whether a person "operated" a vehicle: "(1) the location of the vehicle when it is discovered; (2) whether the car was moving when discovered; (3) any additional evidence indicating that the defendant was observed operating the vehicle before he or she was discovered; and (4) the position of the automatic transmission." In addition to these four factors, "[a]ny evidence that leads to a reasonable inference should be considered." *Id*.

Corbin relies on *Johnson v. State,* 518 N.E.2d 1127, 1128 (Ind. Ct. App. 1988), arguing that the State did not establish that she operated her disabled vehicle before encountering the deputies.

[30] In *Johnson*, a police officer investigated a vehicle parked on the side of the road. *Johnson*, 518 N.E.2d at 1127. An officer observed a vehicle parked off the road. *Id*. The officer stopped to investigate and found Johnson in the driver's seat. *Id*. Johnson explained that the car was disabled and proved the car would not start. *Id*. The officer asked Johnson for identification and ran a routine check on Johnson's license. *Id*. The officer learned Johnson's driving privileges had been revoked. *Id*. As such, he arrested Johnson for operating a motor vehicle while his driving privileges were suspended. *Id*. At his trial, Johnson explained he had not been driving the car, the car would not start, and he was waiting for a friend to return with a tow. *Id*. Two witnesses corroborated Johnson's story. *Id*. On appeal, we reversed Johnson's conviction. In reaching that holding, we noted that the State had presented no evidence at trial that Johnson had driven the car or that the car was operable at the time of Johnson's arrest. *Id*. at 1129.

[31] Although there are some factual similarities, we find the *Johnson* case distinguishable. Unlike *Johnson*, Corbin did not inform the deputies that she had not operated the vehicle or that she was waiting for towing services. We note that Corbin's vehicle had stalled on the shoulder of 1-74, an area used only for emergencies. While the record is silent as to the position of the vehicle's gear, Corbin was seated behind the wheel, and she informed the deputies that she was coming from a wedding and "was driving back to her Indiana, Indianapolis area address." (Tr. Vol. II, p. 11). It is reasonable to infer that in order to get her vehicle from the wedding to the shoulder of I-74, Corbin must have driven her vehicle to get to that location. Thus, applying the plain

language of Indiana Code section 9-13-2-117.5 to this case, a reasonable finder of fact could conclude from this evidence that Corbin was in "actual physical control" of her vehicle and met the statutory definition of the word "operate."

### B. *Administration of the Chemical Breath Test*

[32] Corbin argues that the State did not prove that the chemical breath test was completed within the requisite period of time. Indiana Code section 9-30-6-2 (c) provides that a chemical breath test "must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under [I.C. §] 9-30-5 or a violation under [I.C. §] 9-30-15."

[33] Indiana Code section 9-30-6-15(b) provides:

> If, in a prosecution for an offense under [Indiana Code chapter] 9-30-5, evidence establishes that:
>
> (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
>
> (2) the person charged with the offense had an [ACE] to at least eight-hundredth (0.08) gram of alcohol per:
>
> (A) one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
>
> (B) two hundred ten (210) liters of the person's breath; the trier of fact shall presume that the person charged with the offense had an [ACE] to at least eight-hundredths (0.08) gram of alcohol per

one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, this presumption is rebuttable.

This statute allows a jury to relate the driver's ACE at the time of the chemical test back to the time the driver operated the vehicle. *See Disbro v. State*, 791 N.E.2d 774, 778 (Ind. Ct. App. 2003), *trans. denied.* If the State fails to prove that the chemical test occurred within three hours of when the defendant last operated her vehicle, it is not allowed to rely on the presumption. *Allman v. State*, 728 N.E.2d 230, 232 (Ind. Ct. App. 2000). Even if the test is not conducted within the three-hour time period, that affects only the presumption and not the test's admissibility. *Mannix v. State*, 54 N.E.3d 1002 (Ind. Ct. App. 2016).

[34] Among the cases that Corbin cites to is *Mordacq v. State*, 585 N.E.2d 22, 23 (Ind. Ct. App. 1992), where this court discussed whether the chemical breath test can "presumptively relate back to an act of operating a vehicle that occurred before an officer encountered the defendant . . . ." Analyzing this issue, we determined that

> [I]n a case where the officer did not observe the defendant operating the vehicle, the statutes could be read to impose no limit on the relation back test, provided the test was performed within three hours of the time an officer investigated the defendant. Such an interpretation would distinguish between those defendants stopped (1) by the police while driving, and (2) those who stop of their own accord or by accident. This could lead to absurd and illogical results unintended by the legislature,

and would operate to the disadvantage of those who, realizing their continued driving posed a threat to public safety, chose to stop. In our view, the three-hour limit expressed in I.C. [§ ] 9-30-6-2(c) begins not from the moment an officer ideates probable cause, but rather from the moment at which the vehicle was operated in violation of I.C. [§ ] 9-30-5.

*Id*. The State argues that Corbin's reliance on *Mordacq* is misplaced.

[35] In *Mordacq*, at approximately 2:30 a.m., an officer observed a vehicle parked alongside the road with its engine running. *Id*. An hour later, the officer returned to find that the vehicle was still there, and the defendant was asleep in the driver's seat. *Id*. After rousing the defendant and smelling alcohol on her breath, the police officer administered a breathalyzer test at 3:55 a.m., which demonstrated that the defendant had a blood alcohol level of 0.10. *Id*. Other than the defendant's own estimate that she had parked her vehicle along the street at least two hours earlier, there was no evidence indicating whether she had operated the vehicle within the three hours preceding the breathalyzer test. *Id*. Accordingly, we held that the "State's failure to prove the time [the defendant] operated her vehicle, to a degree precise enough to trigger a statutory presumption that incorporates a precise time limit, precludes evidentiary use of the presumption." *Id*. at 27.

[36] A few years after *Mordacq*, this court reached a similar conclusion in *Allman v. State*, 728 N.E.2d 230 (Ind. Ct. App. 2000). There, a police officer was dispatched to a car accident at approximately 10:00 p.m. *Id*. at 231. When the officer arrived, he observed a driver sitting in her vehicle off the side of the road,

but no other vehicles or people were nearby. *Id*. The officer detected an odor of alcohol on the driver's breath; following two invalid breathalyzer tests, the driver's blood was drawn at 12:28 a.m. and revealed a blood alcohol level of 0.104. *Id*. Although the defendant's blood was drawn within three hours of the police dispatch, the statutory presumption was inapplicable because there was no evidence regarding when the accident occurred in order to relate the blood alcohol level back to the time of the accident. *Id*. at 234.

[37] While there are factual similarities among these cases and the current case, we find that the circumstantial evidence present in the case at bar readily distinguishes it from *Mordacq* and *Allman*. In both *Mordacq* and *Allman*, an officer responded to a parked vehicle where there were no other witnesses, and there were no other facts from which it could be inferred that the drivers had operated their vehicles within the necessary timeframe. In Corbin's case, the deputies were dispatched at 11:36 p.m., and they arrived at 11:43 p.m. to attend to Corbin's stalled vehicle facing eastbound near the 41 ½ mile marker on I-74. Corbin then informed the deputies that she was driving from a wedding and was heading home. Corbin displayed signs of intoxication. Corbin also informed Deputy Redmon that she had consumed two or three glasses of wine between 10:00 and 10:30 p.m. Deputy Redmon administered field sobriety tests, and Corbin failed all of them. Corbin was arrested and transported to jail.

[38] After Corbin had been booked in jail, she submitted to a chemical test. Deputy Redmon, a certified breath test operator, administered the test at approximately 12:20 a.m. The test showed that Corbin's ACE was 0.152, well above the

statutory threshold. Our role on appeal is to consider "the probative evidence supporting the judgment and the reasonable inferences that may be drawn [therefrom.]" *Dorsett v. State*, 921 N.E.2d 529, 531 (Ind. Ct. App. 2010).

[39] Here, the fact finder was allowed to deduce that Corbin's last alcoholic beverage was consumed at 10:30 p.m. and after that, Corbin got behind the wheel and drove her vehicle before it broke down on I-74. Since Corbin's chemical breath test was administered at 12:20 a.m., it may be inferred from the evidence that a presumption existed that Corbin had an ACE of at least 0.15 at the time she operated the vehicle. Therefore, we conclude that the State met its burden of proof beyond a reasonable doubt, and we affirm Corbin's conviction for operating a vehicle with an ACE of 0.15 or more, a Class A misdemeanor.

## CONCLUSION

[40] For the foregoing reasons, we conclude that the trial court did not abuse its discretion by admitting Corbin's statements to the deputies or the results of the chemical breath test. Also, the State presented sufficient evidence beyond a reasonable doubt to convict Corbin of Class A misdemeanor operating a vehicle with an ACE of 0.15 or more.

[41] Affirmed.

[42] Kirsch, J. and May, J. concur