Celeste **MORDACQ**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 09A05–9107–CR–235.

Court of Appeals of Indiana,
Fifth District.

Jan. 21, 1992.

Steven J. Moss, Jeffrey S. Zipes, Coots Henke & Wheeler, Carmel, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office Of Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

Celeste Mordacq was convicted in a bench trial of operating a vehicle with at least .10% blood alcohol content, a Class C misdemeanor. Her appeal argues the evidence was insufficient. We agree, and reverse.

### FACTS

In the early morning of January 19, 1991 Logansport police officer Rozzi noticed a car parked in the 100 block of 7th Street with its engine running. Rozzi continued on his rounds. Approximately an hour la-ter, at around 3:30 a.m., having returned to 7th St. and noticing the same car, still running and appearing unmoved from before, Rozzi decided to investigate further. He found Mordacq in the driver's seat, asleep. After wakening her, and smelling an odor of alcohol on her breath, Rozzi administered a portable breath test, then transported Mordacq to the county jail, where the Intoxilyzer 5000 recorded a blood alcohol content ("BAC") of .10%. The Intoxilyzer printout, admitted into evidence as State's exhibit 4, indicates a test time of 3:55 a.m., and shows a handwritten notation "3:33 a.m." entered in the blank space labeled "time first observed." Rozzi testified that when he first questioned Mordacq, she told him that she had driven to 7th St. at least two hours earlier, but she wasn't sure of the time. Rozzi issued Mordacq a summons for operating while intoxicated, Ind.Code 9–30–5–2, later amended by information to operating with at least .10% BAC, I.C. 9–30–5–1.[1] Apart from Mordacq's admission to Rozzi, the State presented no evidence as to how or when her vehicle arrived at 7th St.

### DISCUSSION

Mordacq was convicted of "operat[ing] a vehicle with at least ten-hundredths percent (0.10%) by weight of alcohol...." I.C. 9–30–5–1. Similarly, I.C. 9–30–5–2 prohibits "operat[ing] while intoxicated...." Although there is no statutory definition of the verb "operate," its meaning can be deduced by reference to the definition of "operator," that is, one who "operates." The "operator" of a motor vehicle is, in pertinent part, "a person ... who ... drives or is in actual physical control of a motor vehicle upon a highway...." I.C. 9–13–2–118(a)(1). Thus, to operate a vehicle is to drive it or be in actual physical control of it upon a highway. *But see Chilcutt v. State* (1989), Ind.App., 544 N.E.2d 856, *trans. denied* (statute prohibiting operating with BAC of .10% or more applies to both private and

---

**1.** Mordacq was charged under Ind.Code 9–11–2–1. That statute has been renumbered I.C. 9–30–5–1. Other statutes relevant to the issues in this case have been recently renumbered. Our statutory references pertain to the current numbering scheme.

public property); *Huey v. State* (1987), Ind. App., 503 N.E.2d 623 (same, operating while intoxicated). This court has written "the State does not have to prove movement of the car." *Johnson v. State* (1988), Ind.App., 518 N.E.2d 1127, 1128. However, the *Johnson* court also opined that "the word 'operate' requires effort, the doing of something, by the operator." *Id.*

■ In reviewing claims of insufficient evidence, we will not weigh the evidence or judge the credibility of the witnesses. We look only at the evidence favorable to the verdict to determine whether the State proved the crime beyond a reasonable doubt. *Chilcutt*, 544 N.E.2d at 859.

■ In a case where a vehicle is discovered motionless with the engine running, whether a person sitting in the driver's seat "operated" the vehicle is a question of fact, answered by examining the surrounding circumstances. Thus, it has been held that the evidence was insufficient in such a case, involving .14% BAC, where the evidence showed that the defendant left a tavern, walked to a car parked in a nearby parking lot, started the engine, then fell asleep. *Hiegel v. State* (1989), Ind.App., 538 N.E.2d 265, *trans. denied; accord Corl v. State* (1989), Ind.App., 544 N.E.2d 211. The *Hiegel* court explained that to show "the defendant merely started the engine of the vehicle is not sufficient evidence to sustain a conviction for operating a vehicle while intoxicated. There must be some direct or circumstantial evidence to show that defendant operated the vehicle." *Id.* at 268. A concurring opinion in *Hiegel* explained further that in order to obtain a conviction for operating while intoxicated, "[t]he most crucial evidentiary bridge that the State must cross is the defendant's intent to operate ... in a state of intoxication.... If the only evidence is that he was sitting in a reclining position behind the wheel of his vehicle with the motor running perhaps to keep warm while the effects of alcohol subsided, this would not support a finding of guilty beyond a reasonable doubt." *Id.*

In contrast to the facts in *Hiegel*, defendants have been held to be operating the vehicle, when found at the wheel of a car with its engine running: on the median strip of a four lane-highway, *Bowlin v. State* (1975), 164 Ind.App. 693, 330 N.E.2d 353, *reh'g denied* (facts created probable cause that defendant had been driving); stopped at an intersection, asleep, *Rose v. State* (1976), 168 Ind.App. 674, 345 N.E.2d 257; stuck in a snowbank on the median of an interstate highway, *Garland v. State* (1983), Ind.App., 452 N.E.2d 1021; and, stopped in a lane of traffic on a county road, asleep, *Traxler v. State* (1989), Ind. App., 538 N.E.2d 268.

■ Mordacq relies on *Hiegel;* the State cites *Rose* and *Bowlin.* We hold that Mordacq was not operating her vehicle within the meaning of I.C. 9–30–5–1 when Rozzi wakened her. There was no evidence that Mordacq's car was stopped in the travel portion of the roadway. Rather, Rozzi consistently used the word "parked." Thus, the facts of this case, in regard to the moment Rozzi found Mordacq asleep, place it within the holding of *Hiegel* rather than *Rose*-type cases. Therefore, the evidence was insufficient to prove a violation of I.C. 9–30–5–1 occurring when Rozzi came upon the sleeping Mordacq.

We turn now to the question whether the evidence was sufficient in regard to Mordacq's admission of having driven to 7th St. some hours before Rozzi investigated her parked car. It is commonly understood that the drinker's BAC varies over time, as the physiological processes of absorption and oxidation run their course. *See Tyner v. State* (1987), Ind.App., 503 N.E.2d 444. At one time, this fact posed an obstacle to the State's task of proving operation of a vehicle while possessed of a BAC of at least .10% in cases where the chemical test was not administered simultaneously with operation of the vehicle. *See Smith v. State* (1986), Ind.App., 502 N.E.2d 122, 127 n. 5, *reh'g denied, trans. denied* ("It would be necessary to show the blood alcohol content at the time of the offense by means of extrapolation ... in order to support a conviction under I.C. 9–[30–5–1].''). Now, however, the State can avail itself of a statutory presumption enacted in 1987 as

I.C. 9–11–4–15, and currently set out in I.C. 9–30–6–15:

(a) At any proceeding concerning an offense under IC 9–30–5, evidence of the amount by weight of alcohol that was in the blood of the person charged with the offense:

(1) at the time of the alleged violation; or

(2) within the time allowed for testing under section 2 of this chapter; as shown by an analysis of the person's breath, blood, urine, or other bodily substance, is admissible.

(b) If, in a prosecution for an offense under IC 9–30–5, evidence establishes that:

(1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and

(2) the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken; the trier of fact shall presume that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable.

The reference in sections (a)(2) and (b)(1) of I.C. 9–30–6–15 to the "time allowed for testing under section 2 of this chapter" directs us to I.C. 9–30–6–2, which provides:

(a) A law enforcement officer who has probable cause to believe that a person has committed an offense under this chapter, IC 9–30–5, or IC 9–30–9 shall offer the person the opportunity to submit to a chemical test.

(b) A law enforcement officer:

(1) is not required to offer a chemical test to an unconscious person; and

(2) may offer a person more than one (1) chemical test under this chapter.

(c) A test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9–30–5.

(d) A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter.

The effect of the foregoing statutes is illustrated in *Livingston v. State* (1989), Ind.App., 537 N.E.2d 75, in which a chemical test conducted twenty-nine minutes after an officer stopped the defendant for speeding revealed a BAC of .13%. Probable cause to believe the defendant had committed an offense under I.C. 9–30–5 arose when, after stopping the defendant for speeding and driving erratically, the officer detected a strong odor of alcohol on the defendant's breath. Because the test was administered within three hours, I.C. 9–30–6–2(c), the test result was admissible, I.C. 9–30–6–15(a)(2), and because the result was at least .10% BAC, it created a rebuttable presumption that the defendant had at least .10% BAC when stopped by the officer, I.C. 9–30–6–15(b)(2). And, because the defendant failed to rebut the presumption, the evidence was sufficient to sustain a conviction for operating with a BAC of at least .10%.

The case at bar presents conceptual difficulties not present in *Livingston*, where operation of the vehicle and probable cause were essentially simultaneous, and the chemical test was administered soon enough that undisputably both operation of the vehicle and an officer's formation of probable cause fell within the three-hour limit. Here, because Mordacq operated the vehicle some hours before Rozzi had probable cause, a question arises as to the application of I.C. 9–30–6–15 and I.C. 9–30–6–2.

The State's theory in the case at bar appears to be that Mordacq's admission of having driven to 7th St. prior to her encounter with Rozzi, combined with her BAC of .10% at 3:55 a.m., sufficed to prove a violation of I.C. 9–30–5–1 at the time she drove to 7th St., due to the operation of I.C. 9–30–6–15 and I.C. 9–30–6–2. Mordacq argues the evidence was insufficient, because the presumption in I.C. 9–30–6–15(b)(2) re-

lates back only to the time of formation of probable cause to believe a violation of I.C. 9–30–5 had been committed, but not back to operation of a vehicle at a time prior to the existence of probable cause in an officer's mind. Therefore, contends Mordacq, the State presented no evidence as to her BAC when she drove to 7th St.

■ Both parties seem to assume that if a chemical test can presumptively relate back to an act of operating a vehicle that occurred before an officer encountered the defendant, then there is a three-hour limit to the relation back. In other words, the parties assume that a chemical test administered at 3:55 a.m. relates back to vehicle operation at 12:55 a.m. or later, but not to operation before 12:55 a.m. We agree with this assumption, although it is possible to read the statutes another way. I.C. 9–30–6–15(b) sets out a presumption that a test result relates back to "the time the person operated the vehicle," provided the test "was performed ... within the ... time allowed for testing under [I.C. 9–30–6–2].... " The time allowed for testing under I.C. 9–30–6–2(c) is "within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense...." Thus, in a case where the officer did not observe the defendant operating the vehicle, the statutes could be read to impose no limit on the relation back of the test, provided the test was performed within three hours of the time an officer investigated the defendant. Such an interpretation would distinguish between those defendants stopped (1) by the police while driving, and (2) those who stop of their own accord, or by accident. This could lead to absurd and illogical results unintended by the legislature, and would operate to the disadvantage of those who, realizing their continued driving posed a threat to public safety, chose to stop. In our view, the three-hour limit expressed in I.C. 9–30–6–2(c) begins not from the moment an officer ideates probable cause, but rather from the moment at which the vehicle was operated in violation of I.C. 9–30–5.[2]

■ In order to relate back by presumption the 3:55 a.m. BAC, the State needed to prove that Mordacq operated her vehicle after 12:55 a.m. We hold that the evidence was insufficient to prove this fact beyond a reasonable doubt. Apart from Mordacq's admission to Rozzi, there was no evidence as to when she drove to 7th St. State's exhibit 4 showed the "time first observed" to be 3:33 a.m. Rozzi testified Mordacq told him, during the first moments of their encounter, that is, within a few minutes of 3:33 a.m., that she had been parked for "at least two hours." This evidence does create the possibility that Mordacq operated after 12:55. However, it is unreasonable to infer from admitted operation "at least two hours" ago proof beyond a reasonable doubt of operation "not more than two hours and thirty-eight minutes" ago. As a result, the presumption of I.C. 9–30–6–15(b) does not arise. Because the State's proof rested entirely on such a presumption, the evidence was insufficient to show Mor-

2. From the transcript of the trial judge's remarks upon the verdict of guilty, we cannot determine whether the judgment below was based on the State's relation back theory, or upon a finding that Mordacq was "operating" the vehicle when accosted by Rozzi. The relation back question raised by the factual posture of this case, that is, a defendant asleep in a parked car, and therefore not then operating the vehicle, differs from those indicating that sleep was not a conscious choice, but rather an inadvertent effect of alcohol ingestion, as in *Rose* and *Traxler*. In the *Rose* scenario, the defendant is deemed to be operating the vehicle when discovered by the officer, and the officer's ideation of probable cause will coincide with the defendant's operation. Assuming that the officer will have noted the time at which investigation yielded probable cause of a violation of I.C. 9–30–5–1, the time at which the presumption expires will be readily ascertainable. *See, e.g., Traxler,* 538 N.E.2d at 268; *McInchak v. State* (1990), Ind.App., 560 N.E.2d 546.

We have found no case analyzing whether the presumption relates back to a prior act of operating the vehicle. In *Chilcutt v. State* (1989), Ind.App., 544 N.E.2d 856 officers dispatched to the scene of an accident observed the defendant lying beside an overturned truck. The defendant admitted driving the vehicle, and a chemical test revealed .17% BAC. The court held the evidence was sufficient to prove the defendant operated the vehicle with at least .10% BAC. The only reference to time in the opinion states the test was administered "within the specified period of time." *Id.* at 858.

dacq's BAC at the time she drove to 7th St.[3]

The concurring opinion in *Hiegel* endorses a policy that "[i]f a defendant leaves an establishment where he has consumed alcoholic beverages to excess and feels that he should not proceed to endanger the life and property of others by operating his motor vehicle, he should be commended for using good judgment." 538 N.E.2d at 268. Our holding here conforms with that viewpoint. The State's failure to prove the time Mordacq operated her vehicle, to a degree precise enough to trigger a statutory presumption that incorporates a precise time limit, precludes evidentiary use of the presumption. There being no other evidence, the conviction must be

REVERSED.

SHARPNACK and STATON, JJ., concur.

3. The following excerpt from the cross-examination of Rozzi illustrates the quality of proof adduced at trial:

Q. She said that she had driven there at least two or maybe more hours before, correct? She wasn't real clear on the time?
A. Something like that.
Q. She wasn't real clear on the time?
A. Yeah.
Q. And, ah, you have no knowledge that she had driven the car at any time after those two hours?
A. I had not seen her drive the car, no.
Q. And you have no knowledge that she had driven any time after she got to that scene and parked the car?
A. I had not seen her driven [sic], I did not see her drive the car.
Record at 88.

Mordacq testified in her defense. Her testimony indicated that the time she drove to 7th St. was "closer to midnight" than to 1:30 a.m. However, we do not weigh the evidence. Our decision the evidence is insufficient is based only on the evidence presented by Rozzi, of operation "at least two hours" before 3:33 a.m.

This case differs from *Smith v. State* (1989), Ind., 547 N.E.2d 845, *reh'g denied*, in which the supreme court set aside an opinion of this court reversing a conviction for operating while intoxicated due to lack of proof of the defendant's BAC at the time he operated the vehicle. Eyewitness testimony proved the time the vehicle was operated. The defendant was tested some three hours later, after being found at home, asleep, and recorded a BAC well over .10%. The presumption of I.C. 9–30–6–15 was inapplicable, because the offense occurred prior to enactment of the statute. In this case, unlike *Smith*, there was no evidence independently establishing the time of operation. In addition, it is apparent that the proof of operating with a BAC of .10% or more differs from the proof of operating while intoxicated, in that the former is based on the result of a chemical test, and therefore does not lend itself, in the absence of a presumption or extrapolation testimony, to the reasonable inferences held dispositive in *Smith*.