

ATTORNEY FOR APPELLANT

Jerry T. Drook
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Elberta N. Jackson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 18, 2017

Court of Appeals Case No.
27A02-1607-CR-1717

Appeal from the Grant Superior
Court

The Honorable Warren Haas,
Judge

Trial Court Cause No.
27D03-1601-CM-13

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Elberta N. Jackson (Jackson), appeals her conviction for operating a vehicle with an alcohol concentration equivalent (ACE) to at least 0.15, a Class A misdemeanor, Ind. Code § 9-30-5-1(b)(1); resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(1); and disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3(a)(2).

We affirm.

## ISSUES

Jackson raises two issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence to support Jackson's conviction for operating a vehicle with an ACE to at least 0.15 beyond a reasonable doubt; and

(2) Whether Jackson's due process rights were violated by the imposition of a two-year administrative driver's license suspension.

## FACTS AND PROCEDURAL HISTORY

At 1:10 a.m. on January 19, 2016, officers from the Marion Police Department were dispatched to the Maplewood Trailer Court, located at 1515 South Miller Avenue in Marion, Grant County, Indiana, based on a report that a vehicle had struck a residence. At least four police officers responded to the scene, including Officer George Kilgren (Officer Kilgren) and Officer Joshua Swanson (Officer Swanson). Upon arrival, the officers observed that an older model silver Buick had crashed into one of the trailers, causing significant damage to

both the vehicle and the home. Fortunately, although the residents were home at the time of the crash, nobody inside the trailer was injured.

[5] At the time, Jackson was standing in the yard and was visibly irate. Even though Jackson was screaming and swearing, Officer Kilgren was able to discern through her rantings that she had been driving the Buick when her passenger suddenly reached over and jerked the wheel, causing them to leave the roadway and smash into the trailer. Officer Swanson opened the passenger-side door, where Jackson's passenger was still sitting. The passenger informed Officer Swanson that she could not feel her legs or hips, so Officer Swanson comforted her until emergency medical personnel arrived. Meanwhile, Jackson continued to act belligerently toward the officers, despite numerous warnings to quiet down.

[6] As Jackson threatened and insulted the officers and her passenger, Officer Kilgren detected the odor of alcohol on her breath. When questioned, Jackson admitted that she and her passenger had been at a party, where she had consumed "a couple drinks." (Tr. p. 18). Officer Kilgren asked Jackson to submit to a portable breathalyzer test, but Jackson refused. Officer Kilgren advised Jackson of Indiana's implied consent law, but Jackson still refused and continued to scream. As a result, the officers advised Jackson that she was being arrested. Jackson struggled and flailed as both Officer Kilgren and Officer Swanson attempted to place her in handcuffs, and, because she refused to walk to the squad car, the officers were forced to drag her.

[7] Based on Jackson's refusal to submit to a portable breathalyzer test, Officer Kilgren applied for a search warrant to obtain a sample of her blood. The warrant was granted at 2:35 a.m., and a phlebotomist at Marion General Hospital completed the blood draw at 3:14 a.m. The Indiana State Department of Toxicology tested the blood sample and determined that Jackson's ACE was 0.183.

[8] The same day, the State filed an Information, charging Jackson with Count I, operating a vehicle while intoxicated in a manner that endangers a person, a Class A misdemeanor, I.C. § 9-30-5-2(b); Count II, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(1); and Count III, disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3(a)(2). On January 29, 2016, the State charged Jackson with Count IV, criminal mischief, a Class B misdemeanor, I.C. § 35-43-1-2(a). On June 28, 2016, the State amended Count I of the Information to charge Jackson with operating a vehicle with an ACE to at least 0.15, a Class A misdemeanor, I.C. § 9-30-5-1(b)(1).

[9] On June 29, 2016, the trial court conducted a bench trial. At the close of the evidence, the trial court found Jackson guilty of Counts I, II, and III, but not guilty of Count IV. Accordingly, the trial court entered a judgment of conviction for operating a vehicle with an ACE to at least 0.15 as a Class A misdemeanor, resisting law enforcement as a Class A misdemeanor, and disorderly conduct as a Class B misdemeanor. Thereafter, the trial court imposed concurrent sentences of 200 days, 180 days, and 180 days, respectively. In addition, the trial court ordered the suspension of Jackson's

driving privileges "for 182 [d]ays consecutive to the administrative suspension for chemical test refusal on [Jackson's] driving record ending on January 19, 2018." (Appellant's App. Vol. II, p. 29). On July 1, 2016, the trial court issued an Amended Judgment of Conviction and Sentencing Order Including License Suspension, which removed any reference to Jackson's driver's license suspension.

[10] Jackson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[11] Jackson claims that the State presented insufficient evidence to prove that her blood alcohol level—*i.e.*, ACE—was at least 0.15 at the time she operated her vehicle.[1] In reviewing a challenge to the sufficiency of the evidence, it is well established that our court neither reweighs evidence nor assesses the credibility of witnesses. *Jarrell v. State*, 852 N.E.2d 1022, 1028 (Ind. Ct. App. 2006). We will affirm the conviction so long as "there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* It is the role of the fact-finder to decide "whether the evidence in a particular case

---

[1] Jackson does not challenge the sufficiency of the evidence supporting her convictions for resisting law enforcement and disorderly conduct.

sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the fact-finder's determination." *Id.*

[12] In order to convict Jackson of a Class A misdemeanor, the State was obligated to prove that she "operate[d] a vehicle with an [ACE] to at least fifteen-hundredths (0.15) gram of alcohol per: (1) one hundred (100) milliliters of the person's blood; or (2) two hundred ten (210) liters of the person's breath." I.C. § 9-30-5-1(b). In this case, the results of Jackson's blood draw indicated that her ACE was 0.183—well above the statutory threshold. Nevertheless, Jackson insists that the State failed to prove that her ACE was at least 0.15 at the time she operated her vehicle because the State offered no evidence that the blood draw was completed within the requisite period of time.

[13] Indiana Code section 9-30-6-15(b) provides:

> If, in a prosecution for an offense under [Indiana Code chapter] 9-30-5, evidence establishes that:
>
> (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
>
> (2) the person charged with the offense had an [ACE] to at least eight-hundredth (0.08) gram of alcohol per:
>
>> (A) one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
>>
>> (B) two hundred ten (210) liters of the person's breath;

the trier of fact shall presume that the person charged with the offense had an [ACE] to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, this presumption is rebuttable.

Although this statute specifically refers to an ACE of at least 0.08, our court has previously stated that the same concept applies in situations concerning higher blood alcohol levels because "the parallel use of the phrase 'at least' indicates that a timely [ACE] test result permits a presumption that the defendant had an identical [ACE] at the time he or she was driving." *Jarrell*, 852 N.E.2d at 1029. The blood or breath test "must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under [Indiana Code chapter] 9-30-5." I.C. § 9-30-6-2(c).[2] Thus, if there is proof that the chemical test occurred within three hours of the accident (*i.e.*, the time Jackson last operated her vehicle), the trial court, as the fact-finder in this case, was presumably entitled to relate Jackson's ACE at the time of the blood draw back to the time of the accident. *See Mannix v. State*, 54 N.E.3d 1002, 1009 (Ind. Ct. App. 2016).

---

[2] If a chemical test is not administered within the three-hour window, the "test results are still admissible to prove blood alcohol at the time of a violation if the State produces additional evidence of such [ACE] by means of extrapolation." *Allman v. State*, 728 N.E.2d 230, 234 (Ind. Ct. App. 2000) (internal quotation marks omitted).

[14] It is undisputed that Jackson's blood was drawn at 3:14 a.m. and her ACE was 0.183. Thus, in order for the State to rely on the statutory presumption that her ACE was 0.183 at the time she last operated her vehicle, it must show that the accident occurred no later than 12:14 a.m. Here, the evidence establishes that the police officers were dispatched to the scene at 1:10 a.m.; however, Jackson posits that there is no evidence to prove what time the accident actually occurred. Jackson relies on *Mordacq v. State*, 585 N.E.2d 22, 23 (Ind. Ct. App. 1992), where, at approximately 2:30 a.m., an officer observed a vehicle parked alongside the road with its engine running. An hour later, the officer returned to find that the vehicle was still there, and the defendant was asleep in the driver's seat. *Id.* After rousing the defendant and smelling alcohol on her breath, the police officer administered a breathalyzer test at 3:55 a.m., which demonstrated that the defendant had a blood alcohol level of 0.10. *Id.* Other than the defendant's own estimate that she had parked her vehicle along the street at least two hours earlier, there was no evidence indicating whether she had operated the vehicle within the three hours preceding the breathalyzer test. *Id.* Accordingly, we held that the "State's failure to prove the time [the defendant] operated her vehicle, to a degree precise enough to trigger a statutory presumption that incorporates a precise time limit, precludes evidentiary use of the presumption." *Id.* at 27.

[15] A few years after *Mordacq*, our court reached a similar conclusion in *Allman*, 728 N.E.2d at 230. There, a police officer was dispatched to a car accident at approximately 10:00 p.m. *Id.* at 231. When the officer arrived, he observed a

driver sitting in her vehicle off the side of the road, but no other vehicles or people were nearby. *Id.* The officer detected an odor of alcohol on the driver's breath; following two invalid breathalyzer tests, the driver's blood was drawn at 12:28 a.m. and revealed a blood alcohol level of 0.104. *Id.* Although the defendant's blood was drawn within three hours of the police dispatch, the statutory presumption was inapplicable because there was no evidence regarding when the accident occurred in order to relate the blood alcohol level back to the time of the accident. *Id.* at 234.

[16] While there are factual similarities among these cases and the current case, we find that the circumstantial evidence present in the case at bar readily distinguishes it from *Mordacq* and *Allman*. In both *Mordacq* and *Allman*, an officer responded to a parked vehicle where there were no other witnesses, and there were no other facts from which it could be inferred that the drivers had operated their vehicles within the necessary timeframe. Conversely, Jackson crashed her vehicle into an occupied residence, causing *substantial* damage to the trailer and her vehicle. When the police officers arrived, Jackson had already exited the vehicle, but her passenger was still sitting in the front seat with the door shut, complaining of possible paralysis. It is undisputed that Jackson had been operating the vehicle at the time of the accident, and the police officers were dispatched at 1:10 a.m. It defies all notions of reasonableness to hypothesize—given the presence of the homeowners, the severity of the damage done to their trailer and Jackson's vehicle, and the potentially serious injuries of Jackson's passenger—that nearly an hour would

have passed between the time of the accident and the summoning of the police (as the accident must have occurred no later than 12:14 a.m. in order for the statutory presumption to apply). Our role on appeal is to consider "the probative evidence supporting the judgment and the reasonable inferences that may be drawn [therefrom]," and here we find that it may be reasonably inferred from the evidence that Jackson operated her vehicle within the three hours preceding the blood draw. *Dorsett v. State*, 921 N.E.2d 529, 531 (Ind. Ct. App. 2010). Accordingly, we affirm Jackson's conviction for operating with an ACE to at least 0.15.

## II. *Due Process*

[17] Jackson also claims that her due process rights were violated because she received a two-year driver's license suspension with "no notice from the State, either through a charging information or an infraction ticket, that she would possibly be found to have violated [Indiana Code section 9-30-7-5] during this bench trial, or that she risked the imposition of a two-year license suspension prior to trial or even during the trial." (Appellant's Br. pp. 14-15).[3] More specifically, Jackson contends that

> [t]he court had no authority to impose a penalty for an uncharged refusal infraction violation, and in doing so, the court denied

---

[3] The State points out that Jackson has waived any due process claim by failing to object to the license suspension or raise such a due process argument at the time of her sentencing. It is well established that a claim may not be raised for the first time on appeal. *See King v. State*, 799 N.E.2d 42, 47 (Ind. Ct. App. 2003), *trans. denied*; *cert. denied*, 543 U.S. 817 (2004). Moreover, the record reveals that Jackson specifically acknowledged to the trial court that "there's gonna be a two (2) year administrative suspension." (Tr. p. 79). Nevertheless, waiver notwithstanding, we will address the merits of Jackson's claim.

> Jackson's due process rights under the U.S. Constitution, amendments V and XIV, and the Indiana Constitution under Section 13 which holds that *the accused shall have the right . . . to demand the nature and cause of the accusation against him, and to have a copy thereof*, and ultimately prejudiced Jackson [*sic*] substantial rights.

(Appellant's Br. pp. 15-16) (alteration in original). We find no merit in Jackson's claim.

[18] Jackson's reliance on Indiana Code section 9-30-7-5 is entirely misplaced because it governs the refusal to submit to a chemical test following an accident that results in serious injury or death. In such a situation, the refusal to submit to a portable breath test or chemical test is a Class C infraction (or a Class A infraction if the person has a prior operating while intoxicated conviction), and the court is required to suspend the individual's driver's license for a period of one or two years. I.C. § 9-30-7-5(a)-(b). On the other hand, because Jackson refused to submit to a chemical test following a law enforcement officer's belief that she had committed the crime of operating with an ACE to at least 0.15, Jackson's case is governed by Indiana Code chapter 9-30-6.

[19] "A person who operates a vehicle impliedly consents to submit to [a] chemical test . . . as a condition of operating a vehicle in Indiana." I.C. § 9-30-6-1. When a law enforcement officer has probable cause to believe that a person has committed the offense of operating while intoxicated (*i.e.*, operating with an ACE to at least 0.15), the officer "shall offer the person the opportunity to submit to a chemical test." I.C. § 9-30-6-2(a). If the individual refuses to

submit to a chemical test, the law enforcement officer is required to "inform the person that refusal will result in the suspension of the person's driving privileges." I.C. § 9-30-6-7(a). If, after being warned of the consequences of refusing to submit to a chemical test, the person continues to refuse, the arresting officer must confiscate the person's driver's license and submit a probable cause affidavit to the prosecuting attorney. I.C. § 9-30-6-7(b). This affidavit must set forth the grounds for probable cause that the individual was operating while intoxicated and specify that the individual refused to submit to a chemical test when offered. I.C. § 9-30-6-8(b). Thereafter, if the trial court determines that there is probable cause that the individual violated the operating while intoxicated statute, the clerk of the court shall forward a copy of the probable cause affidavit to the Bureau of Motor Vehicles (BMV). I.C. § 9-30-6-8(a).

[20] Accordingly, contrary to Jackson's claim, her refusal to submit to a chemical test was not a separate, chargeable infraction for which she was entitled to any notice. Rather, she received notice from Officer Kilgren that her refusal to submit to a chemical test when offered would result in a license suspension, and Indiana Code section 9-30-6-9(b) required the BMV to automatically suspend Jackson's driving privileges. As the trial court noted during Jackson's sentencing, she was convicted of operating while intoxicated in 2007. Based on this prior conviction, the BMV was obligated to suspend Jacksons' driver's license for a period of two years. I.C. § 9-30-6-9(b)(1)(B). Following its suspension of Jackson's license, the BMV was required to mail notice of the

suspension to Jackson and advise her of her right to judicial review under Indiana Code section 9-30-6-10. It appears that Jackson opted not to avail herself of this statutory remedy for challenging the administrative suspension of her license. Therefore, we find that Jackson's due process rights were not violated.

## CONCLUSION

Based on the foregoing, we conclude that there is sufficient evidence to support Jackson's conviction for operating a vehicle with an ACE to at least 0.15, and we further conclude that Jackson's due process rights were not violated.

Affirmed.

Crone, J. and Altice, J. concur