

FILED
Sep 05 2019, 9:09 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey Lamar Winters, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 5, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-431 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark F. Renner, Magistrate <br><br> Trial Court Cause No. <br> 49G08-1806-CM-18599 |

**Tavitas, Judge.**

## Case Summary

[1] Corey Winters appeals his conviction for operating a vehicle with an alcohol

concentration equivalent ("ACE") of .08 or more, a Class C misdemeanor, after

police discovered Winters sitting in his running vehicle, which was parked halfway in a residential driveway and halfway in the roadway. We affirm.

## Issue

The sole issue before us is whether the evidence is sufficient to support Winters' conviction.

## Facts

At 5:15 a.m. on May 26, 2018, Officer Vincent Marshall with the Indianapolis Metropolitan Police Department ("IMPD") responded to a request for a welfare check on a person parked in a running vehicle in Marion County. Officer Marshall observed a black Chevy suburban in the "two north bound lanes of Lynhurst Drive." Tr. Vol. II p. 6. According to Officer Marshall, "it appeared the suburban had backed into a driveway along the east side of the roadway and the front end of the suburban was sticking out into the east most north bound lane obstructing traffic. So, halfway in the driveway and halfway in the road." *Id.* The vehicle was running, and it appeared that Winters was sleeping in the driver's seat of the vehicle.

Officer Marshall woke Winters and smelled alcohol on Winters' breath, observed that Winters' eyes were red and watery, and noticed that Winters' speech was slurred. Officer Marshall conducted a horizontal gaze nystagmus test, which Winters failed. Officer Marshall then called Lieutenant Michael DeHart, a member of the DUI task force, to the scene.

[5] Lieutenant DeHart arrived on the scene, put Winters in the back of his police vehicle, and read Winters his *Miranda* rights. Winters admitted to Lieutenant DeHart that Winters had been out drinking that night. Lieutenant DeHart also smelled alcohol on Winters' breath, observed that Winters' eyes were "blood shot and glassy," and noticed that Winters' speech was slurred. *Id.* at 14. An inventory search of Winters' vehicle yielded empty alcohol containers. Lieutenant DeHart transported Winters to Eskenazi Hospital and performed three field sobriety tests—the horizontal gaze nystagmus test, the walk and turn test, and the one-legged stand test—inside a holding area of the hospital. Winters failed all three tests.

[6] Winters submitted to a chemical blood test at the hospital at 7:11 a.m. on May 26, 2018. Winters' lab report indicated that Winters' "plasma-serum ethyl alcohol concentration" was .136%, which corresponds "to a whole blood ethyl alcohol concentration" in the range of .107% to .128%. State's Ex. 1.

[7] The State charged Winters on June 11, 2018, with Count I, operating a vehicle while intoxicated endangering a person, a Class A misdemeanor; and Count II, operating a vehicle with an ACE of .08 or more, a Class C misdemeanor.

[8] A bench trial occurred on January 29, 2019, where witnesses testified to the foregoing facts. At the end of the presentation of the State's evidence, Winters' counsel moved for dismissal under Indiana Trial Rule 41(B). The trial court denied Winters' motion.

[9] Winters took the stand in his defense and testified that he left a bar at 1:30 a.m. on May 26, 2018, and drove for about thirty seconds before he pulled over and parked because he "felt uncomfortable driving," "partially" because he had been drinking; he indicated that his discomfort "was more fatigue [] than alcohol." Tr. Vol. II pp. 23, 26. Winters disagreed that his vehicle was obstructing traffic, but instead, alleged that officers may have incorrectly perceived that his vehicle was partially in the roadway based on the position in which he parked his vehicle.

[10] The trial court found Winters not guilty of Count I and guilty of Count II. Winters now appeals.

## Analysis

[11] Winters argues the evidence is insufficient to support his conviction. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied.* Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*.* "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will

affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[12] The offense of operating a vehicle with an ACE of .08 or more, a Class C misdemeanor, is governed by Indiana Code Section 9-30-5-1(a), which provides: "A person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per: (1) one hundred (100) millimeters of the person's blood . . . commits a Class C misdemeanor." Winters argues that the evidence is insufficient because he testified that he left the bar at approximately 1:30 a.m. and pulled over and parked shortly thereafter. The officers did not find Winters until 5:15 a.m., and Winters did not receive a chemical test until 7:11 a.m.

[13] According to Winters, the State was not able to rely on the statutory presumption in Indiana Code Section 9-30-6-15, which states:

> At any proceeding concerning an offense under IC 9-30-5[1] or a violation under IC 9-30-15, evidence of the alcohol concentration that was in the blood of the person charged with the offense:
>
> > (1) at the time of the alleged violation; or

---

[1] Winters' conviction was under this provision.

>> (2) within the time allowed for testing under section 2 of this chapter;

> as shown by an analysis of the person's breath, blood, urine, or other bodily substance is admissible.

"Section 2" as referenced in the statute above, states that the chemical test must be administered "within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9-30-5. . . ." Ind. Code § 9-30-6-2(c).

[14] To rely on this presumption, according to Winters, the State was required to prove that Winters operated the vehicle at some point after 4:11 a.m.—three hours before his chemical test—which he contends the State failed to do. *See Allman v. State,* 728 N.E.2d 230, 230 (Ind. Ct. App. 2000) (finding that the evidence was insufficient to support Allman's conviction because the State neither "establish[ed] the precise time of the accident" to properly rely on the statutory presumption of the blood test results nor "offer[ed] testimony relating Allman's blood alcohol level back to the time of the accident").

[15] The State argues that, when officers found Winters at 5:15 a.m., he was "operating" his vehicle as defined by law. "The operator of a motor vehicle is, in pertinent part, a person who drives or is in actual physical control of a motor vehicle upon a highway." *Mordacq v. State,* 585 N.E.2d 22, 23 (Ind. Ct. App. 1992) (quotations and citations omitted). "Thus, to operate a vehicle is to drive it or be in actual physical control of it upon a highway." *Id.* "This court has

written 'the State does not have to prove movement of the car.'" *Id.* at 24 (quoting *Johnson v. State,* 518 N.E.2d 1127, 1128 (Ind. Ct. App. 1988)). "However, the *Johnson* court also opined that the word "operate" requires effort, the doing of something, by the operator." *Id.*

[16] In other words, the parties' main disagreement is whether Winters' was "operating" the vehicle at 5:15 a.m., when police discovered him. If Winters was "operating" the vehicle, then the State could rely on the three-hour presumption in the statute; if Winters was not operating the vehicle, then the State could not rely on the presumption in the statute because the operation did not occur within three hours of the blood test. Our Court in *Mordacq*, 585 N.E.2d at 24, summarized the law well, stating:

> In a case where a vehicle is discovered motionless with the engine running, whether a person sitting in the driver's seat "operated" the vehicle is a question of fact, answered by examining the surrounding circumstances. Thus, it has been held that the evidence was insufficient in such a case, involving .14% BAC, where the evidence showed that the defendant left a tavern, walked to a car parked in a nearby parking lot, started the engine, then fell asleep. *Hiegel v. State* (1989), Ind. App., 538 N.E.2d 265, *trans. denied; accord Corl v. State* (1989), Ind. App., 544 N.E.2d 211. The *Hiegel* court explained that to show "the defendant merely started the engine of the vehicle is not sufficient evidence to sustain a conviction for operating a vehicle while intoxicated. There must be some direct or circumstantial evidence to show that defendant operated the vehicle." *Id.* at 268.

[17]     Our Court's *Mordacq* opinion reviewed situations in which defendants have been found in their vehicles with the engine running and the factual variances between each to demonstrate what constitutes sufficient evidence of operating a vehicle. As noted above, in instances like *Hiegel,* where the defendant was merely asleep behind the wheel of his vehicle, with the motor running in the parking lot of a tavern, the evidence was insufficient to prove Hiegel operated a vehicle on a highway while under the influence of alcohol. On the other hand, the following scenarios supplied sufficient evidence of a defendant operating a vehicle as identified in *Mordacq*: when the defendant was behind the wheel with the engine running and "on the median strip of a four lane-highway"; "stopped at an intersection, asleep"; "stuck in a snow bank on the median of an interstate highway"; or "stopped in a lane of traffic on a country road, asleep." *Mordacq,* 585 N.E.2d at 24 (collecting cases).

[18]     In *Mordacq,* our Court was presented with a factual scenario that led our Court to conclude that the evidence was insufficient to show Mordacq was operating her vehicle within the meaning of the statute. The facts in this Court's opinion indicate that Mordacq's car was "parked in the 100 block of 7th Street with its engine running." *Id.* at 23. There was no indication that Mordacq's vehicle was in any portion of the roadway where vehicles regularly travel. Our Court held: "[t]here was no evidence that Mordacq's car was stopped in the travel portion of the roadway." *Id.* at 24.

[19]     The nuances in these previous cases demonstrate how fact-sensitive these cases are. Here, Officer Marshall testified that, when he found Winters, the car was

running with Winters sleeping behind the wheel. Winters admitted to driving at 1:30 a.m. after spending time the night prior at a nearby bar. The vehicle was found halfway in a driveway and halfway in the roadway obstructing traffic. Unlike *Mordacq,* Officer Marshall indicated that Winters' vehicle was in the travel portion of the roadway—obstructing a lane of traffic. In fact, when pressed on cross-examination, Officer Marshall testified that the vehicle was "halfway in the roadway and halfway in the driveway. [Officer Marshall] wouldn't just say the front tip [of the vehicle was in the roadway]." Tr. Vol. II p. 11.

[20] The trial court could have reasonably concluded that Winters was operating his vehicle when Officer Marshall found Winters alone in the driver seat of the running vehicle, halfway in the road obstructing traffic and halfway in a driveway at 5:15 a.m. Winters' argument that we should conclude otherwise is merely a request for us to reweigh the evidence, which we cannot do. *See Gibson*, 51 N.E.3d at 210.

[21] Accordingly, because the State demonstrated that Winters operated his vehicle at 5:15 a.m., the 7:11 a.m. chemical test was timely conducted within the three-hour time period after the officer had probable cause to believe Winters committed an offense. The State was, therefore, able to rely on the statutory presumption regarding Winters' blood test results. The evidence is sufficient to support Winters' conviction.

## Conclusion

[22] The evidence is sufficient to support Winters' conviction. We, accordingly, affirm.

[23] Affirmed.

Brown, J., and Altice, J., concur.