

IN THE

# Court of Appeals of Indiana

Tyrone Stokes,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Jan 30 2026, 9:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

January 30, 2026

Court of Appeals Case No.
25A-CR-1740

Appeal from the St. Joseph Superior Court

The Honorable Matthew Raper, Magistrate

Trial Court Cause No.
71D02-2407-CM-002023

---

**Opinion by Judge Felix**
Judges Brown and Scheele concur.

**Felix, Judge.**

## Statement of the Case

Law enforcement officers discovered Tyrone Stokes intoxicated at the scene of a late-night car accident, and an ensuing blood draw revealed Stokes had an alcohol concentration equivalent ("ACE") to 0.20 grams of alcohol per 100 milliliters of blood. Stokes was charged with multiple offenses, including operating a vehicle while intoxicated endangering a person and operating a vehicle with an ACE to at least 0.15 grams of alcohol per 100 milliliters of blood ("ACE count"). The trial court only entered a conviction on the ACE count. Stokes appeals and raises one issue: Whether the State presented sufficient evidence to support Stokes's conviction.

We reverse and remand.

## Facts and Procedural History

In the early morning hours of April 4, 2024, at some point that is unclear from the record, Stokes contacted law enforcement and reported that he had been in a car accident in South Bend near the Michigan border. Michigan law enforcement officers were the first to arrive, although the time of their arrival is also unclear from the record. After determining the accident was "an Indiana jurisdiction call," the Michigan officers contacted Indiana law enforcement. Tr. Vol. IV at 18.

[4]     St. Joseph County Sheriff's Department Officer Jax Ohda arrived at the scene around 2:00 a.m. Officer Ohda observed that a vehicle had crashed into a tree. Stokes was standing next to the vehicle smoking a cigarette. As Officer Ohda approached Stokes, he "could smell the odor of alcoholic beverages emanating from [Stokes]" and "noticed [Stokes's] eyes were red and glossy" and that Stokes's "speech was slurred." Tr. Vol. IV at 19.

[5]     Stokes seemingly admitted to driving when he told Officer Ohda that the accident occurred because Stokes "saw 'em coming in a row,[1] and [he] pulled off the road."[2] State's Ex. 1 at 1:45. Stokes, however, denied driving and drinking alcohol that day and refused to participate in a field sobriety test or a breathalyzer test.

[6]     Officer Ohda placed Stokes under arrest and investigated the scene. Officer Ohda discovered blood on the dashboard and steering wheel as well as injuries to Stokes's knuckles. Officer Ohda also discovered that only the airbags in front of the driver's seat had deployed, brush around the vehicle had been "stomped down" only by the driver's side door, Tr. Vol. IV at 23, there were no footprints other than by the driver's side door, and Stokes had the keys to the vehicle in his pocket. This information led Officer Ohda to believe that Stokes was the

---

[1] Stokes did not explain who or what he saw, but we presume he meant other vehicles.

[2] Throughout the night, Stokes changed his story several times about who was driving, who owned the car, and whether he had been drinking. After admitting being the driver, he later told Officer Ohda that he had been seated in the backseat of the vehicle, he did not know who the driver was or who owned the car, and the driver "ran off into the woods" after the accident. State's Ex. 1 at 28:35, 32:30.

driver of the vehicle. Inside the vehicle, Officer Ohda found a cup with an ice cube in it and some liquid spilled on the floorboard. While Officer Ohda presumed the liquid was alcohol, he conceded that it was simply a liquid.[3] Officer Ohda did not find any alcohol bottles in the car or near the scene. *Id*. at 94.

[7] Officer Ohda applied for a warrant to draw blood for testing, which was granted at around 3 a.m., and Stokes was taken to a nearby hospital. The blood draw was performed at 3:21 a.m., and the results indicated Stokes had an ACE to approximately 0.20 grams per 100 milliliters of blood.

[8] The State charged Stokes with Count I, the ACE count, a Class A misdemeanor[4]; Count II, operating a vehicle while intoxicated endangering a person, a Class A misdemeanor[5]; and Count III, operating a vehicle while intoxicated, a Class C misdemeanor[6]. During the ensuing bench trial, Officer Ohda testified regarding his investigation, although he admitted that he did not know the time the accident occurred.

---

[3] At trial, Officer Ohda did not explain why he believed the liquid on the floorboard was alcohol. In the bodycam footage, Officer Ohda stated that the liquid on the floorboard was "probably alcohol" because Stokes had "ice all over" the floorboard. State's Ex. 1 at 11:45.

[4] Ind. Code § 9-30-5-1(b).

[5] Ind. Code § 9-30-5-2(b).

[6] Ind. Code § 9-30-5-2(a).

[9] Stokes represented himself and testified in his own defense. Stokes's version of the events contradicted his multiple stories to Officer Ohda. According to Stokes, he was working with individuals in another vehicle to deliver orders for DoorDash. After finishing the deliveries, he and the others stopped at a liquor store, although Stokes could not remember the name of the store. They placed all the liquor in the other vehicle; Stokes "hadn't had anything to drink" yet. Tr. Vol. IV at 71. As Stokes was driving toward South Bend, he "looked down" to turn off a notification on his cellphone from DoorDash, and when he "looked back up, the tree was right there." *Id.* at 61.

[10] After Stokes realized he totaled the vehicle, which at trial, he admitted belonged to his wife, he asked someone from the other vehicle to give him the liquor, and Stokes started "drinking it and drinking it." Tr. Vol. IV at 61. Stokes did not recall what liquor he drank, but "[i]t could have been a fifth of Hennessy." *Id.* at 75. Stokes continued drinking as he waited approximately one and a half to two hours on the phone with a tow truck company. Meanwhile, the other vehicle left. Sometime after calling for the tow truck, Stokes contacted law enforcement to report the accident; Stokes did not testify regarding the time of either call. Nor did the State present any evidence of the time of dispatch. Stokes "wanted to drink [the] liquor before the police came, and [he] was drinking fast." *Id.* at 66. Stokes admitted that he lied to law enforcement officers "a lot of times" on the night of the accident, including his statement that he did not drive the vehicle. *Id.* at 77.

[11]     The trial court found the State "prove[d] its case beyond a reasonable doubt," Tr. Vol. IV at 129, but only entered a conviction on the ACE count. According to the record, Counts II and III were "dismissed" pursuant to double jeopardy concerns. Appellant's App. Vol. II at 61. Stokes was sentenced to 60 days in jail. This appeal ensued.

## Discussion and Decision

### 1. The State Did Not Present Sufficient Evidence to Support Stokes's Conviction for the ACE Count

[12]     Stokes argues that the State presented insufficient evidence at trial to support his conviction for the ACE count. Our standard of review for such a claim is as follows:

> "A conviction is supported by sufficient evidence if 'there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024) (quoting *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015)). This Court reviews only the evidence most favorable to the verdict and the reasonable inferences therefrom, and will reverse only where it is shown that "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Teising [v. State*], 226 N.E.3d [780,] 783 [(Ind. 2024)].

*Konkle v. State*, 253 N.E.3d 1068, 1090–91 (Ind. 2025). We do not reweigh the evidence or reassess witness credibility. *Id.* at 1090 (quoting *Teising*, 226 N.E.3d at 783).

[13]     In order to prove Stokes operated a vehicle with an ACE to at least 0.15 grams of alcohol per 100 milliliters of blood, the State had to prove beyond a reasonable doubt that Stokes "operate[d]" the vehicle with the requisite ACE. Ind. Code § 9-30-5-1(b). Stokes does not dispute that he operated the vehicle and that his ACE exceeded 0.15 grams when measured. Rather, Stokes argues that the State failed to prove that his ACE exceeded 0.15 grams *when* he operated the vehicle because the blood draw was administered "some indeterminate time after he last operated the vehicle." Appellant's Br. at 7.

[14]     The State directs us to the rebuttable presumption provided under Indiana Code section 9-30-6-15(b). The statute provides for a rebuttable presumption that (1) when a blood draw or other "chemical test" is administered "within the period of time allowed for testing under" Indiana Code section 9-30-6-2, and (2) the test reveals "an [ACE] to at least eight-hundredths (0.08) gram of alcohol per . . . one hundred (100) milliliters of the person's blood at the time the test sample was taken", then (3) "the person charged with the offense had an [ACE] to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood . . . at the time the person operated the vehicle."[7] In other words, the presumption allows the factfinder to "relate the driver's blood

---

[7] Although Indiana Code section 9-30-6-15(b) refers to an ACE to at least 0.08 grams per one hundred milliliters of blood, and the conviction here required proof of an ACE to 0.15, we have held that the statute "applies in situations concerning higher blood alcohol levels because 'the parallel use of the phrase "at least" indicates that a timely [ACE] test result permits a presumption that the defendant had an identical [ACE] at the time he or she was driving.'" *Jackson v. State*, 67 N.E.3d 1166, 1170 (Ind. Ct. App. 2017) (citing *Jarrell v. State*, 852 N.E.2d 1022, 1029 (Ind. Ct. App. 2006)) (quotation marks modified).

alcohol content at the time of a chemical test back to the blood alcohol at the time of the accident." *Allman v. State*, 728 N.E.2d 230, 232 (Ind. Ct. App. 2000) (citing *Finney v. State*, 686 N.E.2d 133, 135 (Ind. Ct. App. 1997), *trans. denied*) (footnote omitted).

[15] The period of time allowed for testing under Indiana Code section 9-30-6-2 is "within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9-30-5." I.C. 9-30-6-2(c). Although the statute references "probable cause," this court has previously held that the State must prove that the chemical test was performed within three hours of the defendant's last illegal operation of the vehicle. *See, e.g.*, *Ramirez-Vera v. State*, 144 N.E.3d 735, 740 (Ind. Ct. App. 2020) (noting that the availability of the presumption depended on whether the State proved "the blood test was administered within three hours of [the defendant] operating the vehicle").

[16] This interpretation of the statute traces back to *Mordacq v. State*, 585 N.E.2d 22, 26 (Ind. Ct. App. 1992). In *Mordacq*, at approximately 2:30 a.m., an officer observed a parked vehicle with its engine running. *Id*. at 23. An hour later, the officer returned to find the vehicle still there. *Id*. The officer investigated the vehicle and found the defendant asleep in the driver's seat. *Id*. Suspecting the defendant had consumed alcohol, the officer administered a breath test at 3:55 a.m. *Id*. The defendant was charged with and convicted of operating a vehicle with a blood alcohol content of at least 0.10%. *Id*.

On appeal, the *Mordacq* court reversed the defendant's conviction. 585 N.E.2d at 26. The court held that "the three-hour limit expressed in I.C. 9-30-6-2(c) begins not from the moment an officer ideates probable cause, but rather from the moment at which the vehicle was operated in violation of I.C. 9-30-5." *Id.* at 26. The court reached this interpretation because it reasoned that, "in a case where the officer did not observe the defendant operating the vehicle"—such as cases where the defendant "stop[s] of their own accord, or by accident"— "the statutes could be read to impose no limit on the relation back of the test, provided the test was performed within three hours of the time an officer investigated the defendant," and such an interpretation "could lead to absurd and illogical results unintended by the legislature."[8] *Id.* at 27. The State, thus, was required to "prove the time [the defendant] operated her vehicle, to a degree precise enough to trigger a statutory presumption." *Id.* The State failed to do so because the defendant was not operating the parked vehicle, and the State failed to prove when the car was last operated. *Id.*

Here, as in *Mordacq*, the State did not present any evidence regarding the timing of Stokes's last operation of the vehicle; Officer Ohda testified that he did not know when the accident occurred. In fact, the only evidence regarding the

---

[8] Indeed, in *Pattison v. State*, 54 N.E.3d 361, 367 (Ind. 2016), the Indiana Supreme Court discussed the presumption under Indiana Code section 9-30-6-15(b) and stated in dicta that the chemical test must be performed "within three hours of the *stop*." (Emphasis modified). This suggests the court read the statute as primarily intended for situations where a drunk driver is pulled over by law enforcement. In such situations, the defendant's operation of the vehicle and the officer's development of probable cause "occur in close proximity to one another," *Warthen v. State*, 588 N.E.2d 545, 547 (Ind. Ct. App. 1992), which was unlike the case in *Mordacq*.

timing of the accident was Stokes's testimony. Stokes claimed that he was on the phone with the tow truck company for "like an hour and 30, maybe two hours" after the accident, he then contacted law enforcement, and Officer Ohda arrived "about 20 to 30 minutes" after the Michigan law enforcement officers initially responded. Tr. Vol. IV at 72. Missing from this timeline is the amount of time that passed (1) after the accident and before Stokes called the tow truck company, (2) after completing the call with the tow truck company and before contacting law enforcement, and (3) before the Michigan officers arrived at the scene after Stokes contacted them. The State concedes that, under Stokes's timeline and assuming all the aforementioned missing-time events occurred almost immediately, the blood draw would have been completed slightly outside the three-hour time limit. Because the State failed to prove that the blood draw was administered within three hours of Stokes's last operation of the vehicle, the State was not entitled to rely on the presumption provided under Indiana Code section 9-30-6-15(b).

[19] The unavailability of the presumption, however, does not end our analysis. Even though the blood draw was administered outside the three-hour time limit, that only "impacts 'the rebuttable presumption, not the admissibility of the chemical test.'" *Hall v. State*, 252 N.E.3d 455, 462 (Ind. Ct. App. 2025) (quoting *Mannix v. State*, 54 N.E.3d 1002, 1009 (Ind. Ct. App. 2016)). Stokes makes no argument that the blood draw was inadmissible, so we consider that evidence properly admitted. The issue then is whether the blood draw results

and the remaining evidence are sufficient to support Stokes's conviction for the ACE count without the statutory presumption.

[20]	We conclude the evidence is not sufficient. The blood draw alone is not sufficient to establish the ACE Stokes had when he last operated the vehicle because "[i]t is commonly understood that the drinker's [blood alcohol content] varies over time, as the physiological processes of absorption and oxidation run their course." *Mordacq*, 585 N.E.2d at 24 (citing *Tyner v. State*, 503 N.E.2d 444, 445–46 (Ind. Ct. App. 1987)). In fact, before the statutory presumption was enacted, the State typically relied on "live testimony explaining retrograde extrapolation as a method to estimate [a defendant's] ACE at the time of driving." *Pattison v. State*, 54 N.E.3d 361, 367 (Ind. 2016). There was no such evidence here.

[21]	To be sure, based on Officer Ohda's observations of Stokes at the scene, one could reasonably conclude that Stokes drank alcohol before or while driving. But Stokes was specifically convicted of the ACE count. The "question" for this offense "is not whether a person was physically or mentally impaired by alcohol. Rather, to convict the defendant, the fact-finder must instead determine how much alcohol—down to hundredths of a gram—was in 100 milliliters of a person's blood when that person operated a vehicle." *Artigas v. State*, 122 N.E.3d 1003, 1006 (Ind. Ct. App. 2019). Evidence of Stokes's "visible intoxication" was "not probative of [this] particular scientific measurement." *Id.* For these reasons, the State failed to present sufficient

evidence to support Stokes's conviction for the ACE count, and we reverse that conviction.

## 2. We Remand with Instructions That the Trial Court Determine Whether to Enter a Conviction for Another Count

[22] Prepared for the eventuality of a reversal of the ACE count, the State argues that we should remand with instructions that the trial court enter a conviction for one of the other offenses with which Stokes was charged but on which the trial court did not enter a conviction. We agree and remand with instructions for the trial court to determine whether to enter a conviction for either (1) operating a vehicle while intoxicated endangering a person, a Class A misdemeanor, as alleged in Count II, or (2) operating while intoxicated, a Class C misdemeanor, as alleged in Count III. We do so for the following reasons.

[23] Appellate Rule 66(C) permits this court to "order correction of a judgment or order" and "order findings or a judgment be modified under Ind. Trial Rule 52(B)." Ind. App. R. 66(C)(7), (8); *see Nunn v. State*, 601 N.E.2d 334, 339 (Ind. 1992) (citing predecessor to Appellate Rule 66(C) as authority to order entry of conviction on lesser included offense when evidence to support greater offense was insufficient).[9] Trial Rule 52(B) permits the trial court, in cases without a

---

[9] This court has typically cited Appellate Rule 66(C) and its predecessors as authority to remand for entry of conviction on a lesser included offense when a conviction on the greater offense is reversed due to insufficient evidence. *See, e.g, Nunn*, 601 N.E.2d at 339; *Trotter v. State*, 838 N.E.2d 553, 560 (Ind. Ct. App. 2005). Nonetheless, Appellate Rule 66 provides us the authority to order entry of conviction for (1) operating a vehicle while intoxicated endangering a person, a Class A misdemeanor, or (2) operating a vehicle while intoxicated, a Class C misdemeanor, under the facts of this case. The language of Appellate Rule 66 is not limited solely to lesser included offenses. Moreover, we note that Stokes was explicitly charged with both (1)

jury, to "open the judgment, if one has been entered" and "enter a new judgment" when "the judgment or findings are either against the weight of the evidence, or are not supported by or contrary to the evidence." T.R. 52(B)(1). We therefore may order correction of the judgment here.

[24] Additionally, sufficient evidence would support a conviction for (1) operating a vehicle while intoxicated endangering a person, a Class A misdemeanor, or (2) operating while intoxicated, a Class C misdemeanor. *See* I.C. 9-30-5-2(a), (b). Officer Ohda's testimony that Stokes had an odor of alcohol, red eyes, slurred speech, and was the driver of a vehicle that had crashed into a tree was sufficient to prove that Stokes was intoxicated when the accident occurred. *See Outlaw v. State*, 929 N.E.2d 196, 196 (Ind. 2010) (*per curiam*). The trial court was not required to believe Stokes's testimony that he only began drinking after the accident or that the accident occurred hours before Officer Ohda arrived. *See Moore v. State*, 652 N.E.2d 53, 57 (Ind. 1995). Indeed, the absence of any alcohol bottles at the scene discredits Stokes testimony that he began drinking "a fifth of Hennessy," Tr. Vol. IV at 75, after the accident. As such, the trial judge stated to Stokes, "I simply can't find that your testimony [is] reasonable." *Id*. at 129. Lastly, regarding the element of endangerment, the circumstances

---

operating a vehicle while intoxicated endangering a person and (2) operating a vehicle while intoxicated, and the trial court found the State "prove[d] its case beyond a reasonable doubt." Tr. Vol. II at 129. The trial judge simply chose not to enter a conviction on either of these offenses due to double jeopardy concerns. Stokes, however, had full "notice that he could be convicted" of either offense. *See Padilla v. State*, 259 N.E.3d 356, 361 (Ind. Ct. App. 2025).

of the accident—crashing into a tree—show that Stokes endangered at least his own life, which is sufficient. *See Tin Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014). For these reasons, we remand with instructions for the trial court to determine whether to enter a conviction for another count.

## Conclusion

Insufficient evidence supports Stokes's conviction for the ACE count because the State did not present evidence regarding the time of the car accident. Accordingly, we reverse Stokes's conviction. However, sufficient evidence would support a conviction for (1) operating a vehicle while intoxicated endangering a person, a Class A misdemeanor, or (2) operating while intoxicated, a Class C misdemeanor. We accordingly remand with instructions that the trial court determine whether to enter a conviction for one of these offenses.[10]

Reversed and remanded.

Brown, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Geoffrey L. Blazi
Blazi Law Office
South Bend, Indiana

---

[10] If the trial court elects to enter the conviction for the Class C misdemeanor offense, a new sentencing hearing should be held, as this is a different level misdemeanor than the Class A misdemeanor ACE count on which Stokes's conviction was originally entered.

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Michelle Hawk Kazmierczak
Deputy Attorney General
Indianapolis, Indiana